**Mary THURMAN, Appellant,**

v.

**ST. LOUIS PUBLIC SERVICE COMPANY,**
**a Corporation, Respondent.**

No. 45820.

Supreme Court of Missouri,
Division No. 2.

Dec. 9, 1957.

Motion for Rehearing or for Transfer to Court en Banc Denied Jan. 13, 1958.

Goldenhersh, Goldenhersh, Koebel & Gallagher and Samuel J. Goldenhersh, St. Louis, for appellant.

Lester F. Stephens, St. Louis, Lloyd E. Boas, St. Louis, of counsel, for respondent.

STORCKMAN, Presiding Judge.

This is an action to recover the sum of $25,000 as damages for personal injuries alleged to have been sustained by the plaintiff when an automobile in which she was riding and a motorbus of the defendant collided. The verdict and judgment were in favor of the defendant. Plaintiff has appealed, charging prejudicial error in two instructions given on behalf of the defendant and in the admission of evidence elicited by the defendant on cross-examination of one of plaintiff's witnesses.

The accident occurred at approximately 6:30 a. m. on March 15, 1955, at the intersection of Sixth and Olive Streets in downtown St. Louis. The plaintiff was an occupant of an automobile being driven south on Sixth; the motorbus was proceeding eastwardly on Olive. The streets were each approximately 40 feet wide and one-way streets in the direction the motor vehicles were moving.

The evidence of the parties fairly well agrees that the collision occurred in the southeast quadrant of the intersection; that some front portion of the motorbus struck the automobile on its right side; that the front bumper of the bus was completely torn away; that the automobile spun around, struck the post of a traffic signal, not then in operation, and came to rest facing north or northwest against a building on the southeast corner of Sixth and Olive Streets. There was, however, sharp conflict as to the speed of the respective motor vehicles, their relative positions immediately prior to the accident, and particularly as to which one entered the intersection first.

Walter Taylor, a single man, age 37, was driving the automobile. The plaintiff, a widow, age 49, riding beside him on the right-hand side of the front seat, testified that she was looking into the display windows of a store on the west side of Sixth Street. However, she knew the automobile stopped before it entered the intersection because she could tell "from the vibration of the car if the car stops or if it proceeds." She further testified the automobile was traveling in the "mid lane" of Sixth Street at about 10 or 12 miles per

hour before it made the stop. She did not see the bus until it was "right upon" her. She had no time to scream or say anything. What attracted her attention was Taylor's sounding the horn on the car when he was "almost across the street." She was rendered unconscious by the impact.

On behalf of the plaintiff, Taylor testified that he was driving south in about the center of Sixth Street at a speed of 10 or 12 miles per hour; he slowed to a speed of about five miles per hour as he approached the intersection, but did not stop. As he entered the intersection he saw the bus about 60 to 70 feet west of the intersection on Olive Street traveling about 35 to 40 miles per hour. As he proceeded into the intersection Taylor speeded up to about 12 to 15 miles per hour trying to get out of the way of the bus, and swerved to his left. The operator of the bus did not swerve, but applied the brakes. The bus slackened its speed somewhat and was "sliding" when it hit the automobile Taylor was driving. Another witness for plaintiff testified the automobile entered the intersection when the bus was about one and one-half lengths of a bus west of the intersection. He estimated the speed of the bus at that time was about 35 miles per hour and that of the automobile "a normal speed," about 25 miles per hour.

On the other hand, defendant's witnesses variously estimated the speed of the automobile within a span of 35 to 45 miles per hour as it proceeded south in Sixth Street and into the intersection; its speed was not slowed or checked before the impact. There was evidence that the bus had stopped to discharge passengers in the middle of the block on Olive Street west of Sixth. Its speed, as it approached and entered the intersection, was estimated within a range of five to fifteen miles per hour. Defendant's evidence was that the motorbus entered the intersection first. Witnesses testified the front of the bus was almost to the center line of Sixth Street before the automobile entered the intersection. Defendant's motorbus operator testi-

fied that when the front end of the bus was about even with the west building line of Sixth Street and moving about 20 miles per hour, the automobile was about 130 feet north of the north curb line of Olive Street and was running about 45 miles per hour. As the bus entered the intersection, its right-hand side was about four or five feet from the south curb line of Olive. The operator applied his brakes when he saw the automobile and swerved a little to his right. The driver of the automobile swerved to his left. The speed of the bus had been slowed to about five miles per hour when the collision occurred about eight feet from the east curb line of Sixth Street.

Plaintiff submitted her case on the theory she was a passenger or guest in the automobile and was exercising ordinary care for her own safety and the defendant was negligent in operating its motorbus at a high, excessive and dangerous rate of speed, and in failing to slacken its speed or swerve it so as to avoid the collision. Defendant's case was submitted on plaintiff's contributory negligence in failing to warn the driver of the approaching motorbus and also on the theory that the automobile driver's negligence was the sole cause of the collision.

Instruction No. 2, given at defendant's request, submitted plaintiff's contributory negligence in failing to exercise ordinary care for her own safety. It permitted the jury to find the plaintiff guilty of contributory negligence if the eastbound motorbus entered the intersection first, if the operator of the motorbus had the right of way through the intersection over the driver of the automobile in which plaintiff was riding, and if the plaintiff allowed and permitted herself to be driven into the path of the eastbound motorbus "when she saw or heard, or by the exercise of ordinary care could have seen or heard, said approaching eastbound motorbus in time thereafter to have warned the driver of the automobile in which she was riding and by so doing to

have thus and thereby avoided the collision."

Plaintiff first complains that the instruction is erroneous in that there could be no causal connection between plaintiff's negligence in failing to warn and the collision, because "there was no showing that plaintiff could have advised the driver of the car in which she was riding of anything of which he was not already aware." In support of her contention, she cites Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S.W.2d 961; Rosenstein v. Lewis Automobile Co., Mo.App., 34 S.W.2d 1023; Fann v. Farmer, Mo.App., 289 S.W.2d 144; Ketcham v. Thomas, Mo., 283 S.W.2d 642; and Happy v. Blanton, Mo., 303 S.W.2d 633. These cases generally recognize the rule that contributory negligence of a guest cannot be predicated upon a failure to warn the driver of something of which he is already aware. However, the facts in those cases were such that they are not decisive of this case.

■ As heretofore stated, the evidence of the plaintiff and defendant was in sharp conflict on the determinative facts. On behalf of the defendant there was substantial evidence that the motorbus had entered and proceeded almost to the extended center line of Sixth Street when the automobile was still north of the curb line of Olive. Also, a police officer, who talked to the drivers of both vehicles at the scene of the accident immediately after the occurrence, testified that the automobile driver, Walter Taylor, told him that he first noticed there was danger of an accident when he was about five feet from the motorbus. Under this and other evidence favorable to the defendant, the jury might reasonably find that the motorbus was in the intersection at a time considerably before the automobile entered the intersection, and that Taylor was not aware of its presence.

■ In determining whether there was substantial evidence to support defendant's theory as submitted in the instruction, we must accept as true the evidence favorable to such theory. Toburen v. Carter, Mo., 273 S.W.2d 161, 164 [3].

■ The defendant is entitled to instructions based upon evidence which favors its theory of the case, notwithstanding such evidence may conflict with evidence offered in support of the theory of the plaintiff. Stoessel v. St. Louis Public Service Co., Mo., 269 S.W.2d 41, 44 [3]; Robb v. St. Louis Public Service Co., 352 Mo. 566, 178 S.W.2d 443, 444 [2].

The standards determinative of a guest's contributory negligence are well established by the Missouri decisions and, as stated in Toburen v. Carter, Mo., 273 S.W.2d 161, 164 [1, 2], are: "In Kaley v. Huntley, 333 Mo. 771, 63 S.W.2d 21, 24 [10], we accepted as correct and applicable to a guest passenger the rule expounded in Berry on the Law of Automobiles (6th Ed.) Vol. I, § 665, as follows: ' "When dangers, which are either reasonably manifest or known to an invited guest, confront the driver of a vehicle, and the guest has an adequate and proper opportunity to conduct or influence the situation for safety, if he sits by without warning or protest and permits himself to be driven carelessly to his injury, this is negligence which will bar recovery." ' See also Boland v. St. Louis-San Francisco R. Co., Mo.Sup., 284 S.W. 141, 144 [4–6]; Ezell v. Kansas City, Mo.Sup., 260 S.W.2d 248, 250 [2–3]. In the absence of visible lack of caution of the driver or known imminence of danger, a guest may ordinarily rely upon a driver who has exclusive control of the vehicle. Flint v. Chicago, B. & Q. R. Co., 357 Mo. 215, 207 S.W.2d 474, 479 [4–5]."

■■ In the instant case the jury could reasonably find on defendant's theory that there was a manifest and imminent danger of a collision between the motorbus already in the intersection and the automobile approaching it; that there was a visible lack of caution on Taylor's part in driving at a high rate of speed toward and into the inter-

section occupied by the motorbus. Further, the jury could reasonably find that the plaintiff had an adequate and proper opportunity to conduct or influence the situation for safety, in that she could have, in the exercise of ordinary care, discovered the danger and warned the driver so that he could have avoided the collision. Toburen v. Carter, Mo., 273 S.W.2d 161, 164 [4]; Knox v. Weathers, 363 Mo. 1167, 257 S.W. 2d 912, 916 [7].

Other factors bearing upon plaintiff's duty are the status of the ownership of the automobile involved and the purpose of the trip. Defendant pleaded and undertook to prove that the plaintiff was the owner of the automobile involved and that she and Taylor were engaged in a joint venture and common enterprise. Instructions offered on the theory the contributory negligence of Walter Taylor was imputable to the plaintiff were refused. The propriety of the offered instructions or the Court's ruling is not before us and we do not decide those questions. However, the evidence in support of these issues throws light upon plaintiff's right and opportunity as a passenger "to conduct or influence the situation for safety."

Plaintiff's own testimony established that her husband, Dr. F. D. Thurman, in 1949, purchased the Buick automobile involved in the accident. He died September 21, 1949, and on October 12, 1949, the plaintiff filed in the Probate Court of the City of St. Louis a verified application alleging that her husband left no children and that she was entitled to all of his property, including the automobile, in satisfaction of her statutory allowances as his widow. On the same day, the probate court made its order approving the application and refusing letters of administration, which had the effect of authorizing her to have the title of the automobile transferred. However, she did not do so and continued to have the licenses issued in the name of Dr. Thurman. The title was still in his name at the time of the accident. It appears, however, that she took possession of the automobile and used it as her own. She testified that she had been riding in and driving the automobile ever "since Doctor Thurman bought it." Both plaintiff and Walter Taylor testified that he was driving the automobile with her permission at the time in question, as he had done on other occasions. She testified the reason she was making this trip was to take him to work, and that she was going to bring the automobile back home.

■ Generally, the right to control the operation of an automobile is one of the attributes of ownership; however, control, or the right to control such operation, may exist in a person not vested with a strictly legal title. McKerall v. St. Louis-San Francisco Ry. Co., Mo.App., 257 S.W. 166, 170; Atchison, T. & S. F. Ry. Co. v. McNulty, 10 Cir., 285 F. 97, certiorari denied 262 U.S. 746, 43 S.Ct. 521, 67 L.Ed. 1212; Hodge v. Feiner, 338 Mo. 268, 90 S.W.2d 90, 92, 103 A.L.R. 483; Blashfield Cyclopedia of Automobile Law, Part I, Perm. Ed., § 2493, pp. 672–673; Smith v. Wells, 326 Mo. 525, 31 S.W.2d 1014, 1025 [12].

■ Plaintiff's own evidence establishes that, as between her and Taylor, the plaintiff had the superior right of possession and control of the automobile. His use of the car was with her permission and by her grace. Her obligation and opportunity "to conduct and influence the situation for safety" was an unusal one for a guest or passenger. Her testimony, however, indicated complete indifference to the manner in which the automobile was being operated. She testified that she "wasn't particularly noticing the intersection or the distance because I wasn't driving," and again that she wasn't paying attention to what was happening to the automobile because Taylor was driving. Under all the circumstances, there was no error in submitting plaintiff's contributory negligence.

■ The plaintiff further attacks Instruction 2 on the ground that it "fails to require a finding as to what if anything

the driver of the automobile in which plaintiff was riding could have done to avoid the collision had he been warned by plaintiff." Whether Taylor could have avoided the collision if he had taken action when, on defendant's theory, the motorbus had entered the intersection and the automobile was still a considerable distance north of it was not an issue on which there was divergent evidence. Instruction 2 was predicated "on all the evidence in the case." This court held in Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496, 500 [2]: "Where there is no divergence in or denial of the essential facts, then the ultimate issue of the negligence pleaded and its being the proximate cause of the injury or damage alleged may be submitted by reference to the facts and circumstances shown by the evidence without specific hypothesization in the instructions." Furthermore, if the plaintiff considered any further hypothesization of this aspect of the instruction necessary, she should have offered a clarifying or amplifying instruction. Gladden v. Missouri Public Service Co., Mo., 277 S.W.2d 510, 520 [18]; Barnes v. Vandergrift, 364 Mo. 829, 269 S.W.2d 13, 17 [8]. We are convinced the jury was not misled. The claim of error is denied.

The plaintiff next claims an error allegedly common to both Instructions 2 and 3. As previously noted, Instruction 2 submitted plaintiff's contributory negligence for failure to warn the driver of the automobile of the presence of the motorbus. Instruction 3 is a sole cause instruction predicated upon defendant's trial theory that Walter Taylor was driving the automobile southwardly on Sixth Street and into the intersection at a speed of approximately 40 miles per hour when the eastbound motorbus, moving at a speed of approximately 5 to 10 miles per hour, was approximately halfway through the intersection; that the motorbus had the right of way through the intersection which Taylor failed to yield when he saw or, in the exercise of the highest degree of care could

have seen, that there was danger of a collision between the two vehicles; that Taylor could have avoided the collision by yielding the right of way to the motorbus, and in failing to do so Taylor was not exercising the highest degree of care and was negligent, and that such negligence was the sole cause of the collision and plaintiff's injuries. The instruction further required a finding that plaintiff's injuries were not due to any negligence on the part of the defendant as set out in other instructions.

The first complaint jointly directed at Instructions 2 and 3 essentially revolves around the use of the term "right of way" in these instructions. It is first charged that the instructions are erroneous because "neither instruction sets forth the law relating to 'right of way.'" Hogan v. Fleming, 317 Mo. 524, 297 S.W. 404, and Petty v. Kansas City Public Service Co., 354 Mo. 823, 191 S.W.2d 653, are cited. In her argument the plaintiff, relying on these cases, contends that "if a party litigant utilizes the violation of a statute as the basis for his cause of action or defense, the jury must be fully instructed as to the law and its construction or interpretation." On the other hand, the defendant contends that the instructions were not based on a statute or ordinance and that it was not necessary to rely in either instruction upon a violation of a statute or ordinance. There is no showing that an ordinance was involved.

■ In Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575, 580 [5], this court stated: "Absent statute or ordinance regulation of vehicle traffic at highway intersections, the vehicle first reaching and entering the intersection has the right of way over a vehicle subsequently reaching the intersection unless the situation would indicate to a reasonably prudent man that to proceed would probably result in a collision, it being the duty of the second arrival to allow the first arrival to pass in safety." Section 304.021(1) RSMo 1949, V.A.M.S., provides: "The driver of a vehicle approach-

ing an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway, provided however, there is no form of traffic control at such intersection." The evidence shows there was no form of traffic control in operation at the intersection at the time in question. Therefore it appears, if defendant's theory of the evidence is correct, that Taylor, either by statute or at common law, would be required to yield the right of way to the motorbus already in the intersection.

The terms used in the instructions are practically in the language of the statute and the cases discussing "right of way." A similar complaint in Mueller v. Holekamp, Mo.App., 260 S.W. 118, loc. cit. 121, was disposed of in this fashion, "It is true the instruction does not detail the particular circumstances under which it was the duty of the defendant to yield the right of way. But it may be assumed that the jury applied to the interpretation of the instruction their own good sense and practical judgment. Negligence ordinarily is a question of fact, not of law. The instruction is as definite and intelligible as the statute under which it was drawn. It employs no technical legal terms unintelligible to the lay mind. It conveyed to the minds of the jury all that the statute conveyed to the mind of the court." The holding is applicable here.

■ Further, in a separate point relied on, plaintiff charges that these two instructions are erroneous "because they instruct the jury to utilize its finding as to 'right of way' without explaining that 'right of way' is not an abstract absolute right that ordinarily applies but which is not without qualification." The point is further explained in plaintiff's argument by the statement that "defendant's bus may have entered the intersection prior to the Taylor automobile but under conspicuously negligent circumstances." The matter of defendant's negligence was a proper matter for plaintiff's instruction and presumably was covered by it. If a further defi-

nition or explanation of the term "right of way" was desired, plaintiff should have requested an instruction to that effect, and the Court cannot be charged with error in the absence of such a request. Nelson v. Tayon, Mo., 265 S.W.2d 409, 415 [4]; Redick v. M. B. Thomas Auto Sales Co., 364 Mo. 1174, 273 S.W.2d 228, 236 [8]; Sandler v. Schmidt, Mo., 263 S.W.2d 35, 38 [3].

Plaintiff's final charge of error is that the Court erred in admitting evidence, during cross-examination of plaintiff's witness John Duggan, a police officer, that there was a notation on Walter Taylor's driver's license requiring him to wear eyeglasses when operating a motor vehicle.

Officer Duggan was plaintiff's first witness. He interviewed the drivers of the respective vehicles at the scene of the accident and was permitted to refresh his recollection from the official report made by him. On cross-examination the witness testified he examined Taylor's driver's license and gave it back to him. Defendant's counsel inquired whether there was any notation on Taylor's license concerning the wearing of eyeglasses. Plaintiff's objection that the license itself, being a written instrument, would be the best evidence, was sustained. When it developed that Taylor was present in the courtroom and would testify, the Court changed its ruling and the officer was permitted, over plaintiff's objection, to testify that Taylor's license bore this notation: "Only permitted to drive when wearing corrective lenses." The officer further testified that Taylor was not wearing corrective lenses at the time of the accident and had none in his possession.

■ Walter Taylor, as a witness for the plaintiff, later testified that he was a resident of the State of Illinois and at the time of the accident had a driver's license issued by that state. He did not have that license with him at the time of trial. He testified that since the accident, on advice of his attorney, he had obtained a Missouri license which was without restrictions. This license was sent to him at 3047 Easton

Avenue, which was plaintiff's address. He did not live there, but the plaintiff told him it would be all right for him to use her address for that purpose. Plaintiff's counsel had the Missouri license marked as an exhibit and passed it to the jury for examination. Taylor testified he had 20-20 vision and had never worn eyeglasses. He admitted that he talked to Officer Duggan at the scene of the accident, but could not recall whether the Illinois license had the restriction that he was permitted to drive only when wearing corrective lenses. He would not say the license was not so restricted.

▉▉▉▉ Clearly, there was no prejudicial error in admitting the evidence complained of. The defendant did not have possession or control of the Illinois license; apparently the same was true of the plaintiff and her witness Taylor. If it was still in existence its whereabouts was not disclosed by those who had the means of knowing. The general rule is that "where an instrument in writing is neither within the jurisdiction of the court nor within the control of either of the parties to the suit, secondary evidence of its contents is admissible." Fuller v. Robinson, 230 Mo. 22, 130 S.W. 343, 354 [15]. Parol evidence is an acceptable method of proving the contents of a writing when a proper showing has been made that the original is not obtainable. Radford v. Horton, 207 Mo.App. 601, 227 S.W. 1073.

In this connection the plaintiff also complains that she was prejudiced because defendant's counsel was permitted "to knowingly and illegally pursue a line of cross-examination which is obviously erroneous and to exaggerate the point." The order of proof was of plaintiff's own choosing. Neither the trial court nor defendant's counsel appear to have acted unfairly in connection with the admission of the testimony or made any improper use of the evidence.

No prejudicial error having been shown, the judgment is affirmed.

All concur.