**William P. LAMFERS and Eulalie Lamfers, Plaintiffs-Appellants,**

v.

**Lee Roy LICKLIDER, Defendant-Respondent.**

No. 47507.

Supreme Court of Missouri,

Division No. 1.

March 14, 1960.

Richard M. Stout, St. Louis, for appellants.

James J. Amelung, Holtkamp, Miller & Risch, St. Louis, for respondent.

VAN OSDOL, Special Commissioner.

Instituting separate actions, plaintiffs, William P. and Eulalie Lamfers, husband and wife, sought recovery against defendant Lee Roy Licklider for injuries suffered in a motor-vehicular collision at the intersection of Lindbergh Boulevard and Missouri Bottom Road in St. Louis County. In his action, plaintiff husband prayed for $10,000 damages for his own personal injuries, and $5,000 for medical expense for the treatment and loss of services of the wife. In her action, plaintiff wife prayed for $10,000 damages for her own personal injuries. In the trial court the two cases were consolidated for trial and, issues of primary negligence of defendant and of contributory negligence of plaintiffs having been submitted to a jury, there were verdicts for defendant and against both plaintiffs. Plaintiffs have appealed from the ensuing judgments.

Plaintiffs' consolidated cases were submitted on negligence of defendant in making a left turn at the intersection immediately into the pathway of the automobile in which plaintiffs were riding and in failing to yield the right of way to them; and negligence of defendant in failing to keep a vigilant lookout ahead and laterally.

Herein, plaintiffs-appellants contend error in giving, at defendant's request, Instructions Nos. 3, 4 and 6, all three of which pertained to issues of contributory negligence. In our examination of these contentions, we have found it necessary to consider much of the evidence adduced in tending to support and refute the issues submitted, particularly the issues of contributory negligence inasmuch as plaintiffs-appellants make the contentions, among others, that the evidence did not justify the submissions of contributory negligence

·of plaintiffs. There is no contention by defendant-respondent that the evidence did not justify the submission of defendant's negligence.

As stated, the collision occurred at and in the intersection of Lindbergh Boulevard (By-Pass U. S. Highway No. 66) and Missouri Bottom Road. Lindbergh Boulevard, generally a north-south highway, is paved with concrete thirty-eight feet in width—two lanes for northbound and two lanes for southbound traffic. The two inner lanes each are ten feet wide and the two outer lanes .each nine feet in width. Missouri Bottom Road runs westwardly (a little south of west) from Lindbergh, and is of asphalt pavement eighteen feet wide although the asphalt surfacing "flares out" to the width of thirty feet at the west side of Lindbergh.

The southbound traveler on Lindbergh moves slightly down grade for some nine hundred seventy feet in approaching Missouri Bottom Road. There is a sign—"intersection ahead"—on the west side of Lindbergh four hundred feet north of Missouri Bottom Road, and there is a filling station west of Lindbergh with two driveways uniting in a "half-moon"—entrances and exits to and from the filling station proper. Defendant testified that the south driveway, sixty-six feet wide, is "roughly" two hundred thirty-one feet north of Missouri Bottom Road, and that it is roughly two hundred twenty-five feet from the north side of the south driveway to the south side of the north one. And a trailer court is located in the area immediately southwest of the intersection.

At approximately four forty-five in a cloudy cold January afternoon, plaintiffs were moving southwardly on Lindbergh in a 1957 Ford. Plaintiff husband was driving, and the Ford was moving in the inner southbound lane—the lane next to the center line of the pavement. The wife was seated in the front seat, and a young woman, a passenger, was seated in the back seat. The three were returning home from their several places of employment at and in the vicinity of Lambert Field. They were intending to move on southwardly through the intersection. At the time, the pavement was dry but traffic was extremely heavy due to the fact that many were returning to their homes from their places of work in the general area.

Defendant was driving a 1955 Chevrolet northwardly on Lindbergh. He was driving in the inner northbound lane—the lane next to the center of the pavement. He was intending to turn left into Missouri Bottom Road, and came to a stop behind a truck and another motor vehicle ahead of it, which vehicles had stopped south of the intersection, the drivers awaiting an opportunity to turn left into Missouri Bottom Road.

Plaintiff husband (hereinafter generally referred to as "plaintiff") testified that he was driving southwardly on Lindbergh toward the intersection at the speed of thirty-five miles per hour. Another automobile was preceding the Ford, and both vehicles were moving on the inner southbound lane. Plaintiff saw defendant's Chevrolet when it was south of the truck which had stopped in the inner northbound lane and south of the intersection. Plaintiff was then fifteen car lengths from the truck. The truckdriver was signaling his intention to turn left. The vehicle preceding plaintiff passed on southwardly through the intersection, and the truck (apparently following the motor vehicle ahead of it) made a left turn into or partially into Missouri Bottom Road. Plaintiff then saw defendant's car "just starting to come across the center line". Plaintiff was then about thirty feet or "approximately one or two car lengths" from defendant's vehicle. "I immediately applied the brakes.—I would say he (front part of defendant's car) was just past or right about the center' of the lane I was traveling in at the time we collided." By the application of the brakes, plaintiff reduced the speed of the Ford to "probably around 25, 20 or 25". The front of the

Ford struck the front of the right side of the Chevrolet (back to the door). Plaintiff said that he, moving thirty-five miles per hour, could stop the Ford in approximately one hundred feet.

Plaintiff wife had had little experience in driving. She did not see defendant's car "until we were striking it". She said she had not been paying any particular attention to traffic conditions. She had been reading the afternoon paper.

A witness for plaintiff testified that the truck, preceding defendant in making a left turn, had stopped "just off the highway (Lindbergh)". An automobile, the driver waiting to turn left into the trailer court, was blocking Missouri Bottom Road. The truck had come to a stop when defendant "started across the center line to make a left turn".

Defendant testified that (driving his Chevrolet northwardly on Lindbergh intending to turn left into Missouri Bottom Road) he stopped his car behind the truck. Another automobile, north of the truck also was waiting to turn left. Defendant first saw plaintiff's car when it was a little north of the north driveway of the filling station west of Lindbergh. The truck, following the vehicle ahead of it, turned left and defendant moved up into position to turn left. Plaintiff was then approximately four hundred feet away—"approximately between the two drives". Defendant then started to turn left—moving two or three miles per hour, "I got almost to the line dividing the two southbound lanes—approximately one foot from that line". Defendant said it took approximately two seconds to move over to that point. "The truck that had made his left turn there in front of me had stopped. Therefore, I had to stop behind him. The rear part of the truck extended about half way back into the curb lane" of Lindbergh. Defendant had brought the Chevrolet to a stop about four feet from the rear of the truck. *After* defendant stopped, he saw plaintiff's car seventy-five or one hundred feet away. On cross-examination defendant said he saw plaintiff was the stated distances away *"when"* defendant stopped. Defendant had stopped in plaintiff's pathway and had remained there for about four seconds before the vehicles collided. Plaintiff had applied the brakes of the Ford, but did not swerve. Other evidence will be referred to in the course of this opinion.

The conflicting factual theories of the respective parties, plaintiffs and defendant, may be seen from this statement of the evidence. Plaintiffs' theory was that defendant so suddenly turned left and immediately into the pathway of plaintiffs' southbound vehicle (and in violation of Section 304.021, subd. 3, RSMo 1949, V.A.M.S.) that plaintiffs could not avoid a collision. And defendant's theory was that, starting to turn left when there was ample time to move entirely across the left lanes of Lindbergh, he was compelled to stop when in plaintiff's pathway, but that, nevertheless, he, defendant, had been in such "stopped" position for such a length of time as was amply sufficient for plaintiff, in the exercise of the highest degree of care, to have averted a collision. Of course the parties were entitled to have their respective theories of fact submitted to the jury if the evidence adduced justified the submissions.

■ The trial court submitted the issue of contributory negligence of plaintiff (husband) by Instruction No. 3, as follows,

"The Court instructs the jury that it is the duty of the driver of a motor vehicle to maintain a constant lookout while his vehicle is in motion to see and discover other vehicles upon such highway and to use the highest degree of care to avoid colliding with such vehicles.

"The Court instructs the jury that if you find from the evidence that upon the occasion in question, the plaintiff William P. Lamfers was operating a motor vehicle along a public highway and at the same time the car driven

by defendant Lee Roy Licklider, was being operated in a northerly direction upon said highway and had come to stop in the process of making a left turn into Missouri Bottom Road, and if you find that plaintiff William P. Lamfers by keeping a lookout could have seen and observed the said automobile operated by defendant Lee Roy Licklider and that thereafter, said William P. Lamfers upon the first appearance of danger, could with the means at hand and with safety to himself, his passengers and his automobile have avoided the collision mentioned in evidence by stopping, slowing or swerving his automobile, but that plaintiff William P. Lamfers failed to do so, then you are instructed that such failure, if any, is negligence as such term is used in these instructions; and if you further find that such failure to exercise the highest degree of care for his own safety, if you so find, contributed to cause plaintiff William P. Lamfers' injuries then you should find that plaintiff William P. Lamfers is guilty of contributory negligence and your verdict must be for the defendant in the cause of action of William P. Lamfers."

Plaintiffs-appellants contend the instruction was erroneous in that it failed to hypothesize facts relating to the position of defendant's vehicle at the time plaintiff had the duty to stop, slow or swerve; the instruction imposed a duty on plaintiff to yield the right of way to defendant's left-turning vehicle but the law is the other way, i. e., requires defendant, turning left, to yield the right of way to plaintiff (Section 304.021, subd. 3, supra); the instruction imposed the duty to see and observe defendant's car and to avoid a collision without limiting the duty to the exercise of the highest degree of care; and the instruction was not supported by the evidence, "because it is contrary to defendant's own testimony that plaintiff applied his brakes immediately when defendant stopped in plaintiffs' path and because there is no evidence of ability to swerve safely, or that slowing up would have avoided the collision, defendant being stopped in plaintiffs' path".

█ Some of the stated contentions also were made with respect to defendant's Instruction No. 4, submitting the contributory negligence of plaintiff wife. Instruction No. 4 was as follows,

"The Court instructs the jury that it is the duty of a passenger in a motor vehicle to exercise ordinary care to see and discover other vehicles upon a public highway and to warn the driver of said vehicle of the proximity of such vehicle.

"You are therefore instructed that if you find from the evidence that upon the occasion in question the plaintiff, Eulalie Lamfers, was a passenger in a motor vehicle being operated southwardly in U. S. Highway 67 By-Pass and at the same time the car driven by defendant Lee Roy Licklider, was being operated in a northerly direction upon said highway and had come to a stop in the process of making a left turn into Missouri Bottom Road, and if you further find that plaintiff, Eulalie Lamfers, allowed and permitted herself to be driven into collision with the said stopped automobile of defendant, if you so find, when she saw, or by the exercise of ordinary care could have seen said defendant's automobile in time thereafter to have warned the driver of the automobile in which she was riding and by so doing to have thus and thereby avoided the collision, but that plaintiff, Eulalie Lamfers, failed to do so, then you are instructed that such failure, if any, is negligence as such term is used in these instructions; and if you further find that such failure to exercise ordinary care for her own safety, if you so find, contributed to cause plaintiff, Eulalie Lamfer's injuries, then you must find that plaintiff Eulalie Lamfers is guilty of contributory negligence and your verdict must

be for defendant in the cause of action of Eulalie Lamfers."

Attending the last-mentioned contention that Instruction No. 3, submitting the contributory negligence of plaintiff husband, was not supported by the evidence, we shall view the evidence in the light most favorable to defendant.

Plaintiffs-appellants remind us that defendant testified that plaintiff put on his brakes "immediately after I (defendant) stopped" and that plaintiff was one hundred feet (or seventy-five) away when defendant stopped. Plaintiffs further remind us that the only evidence as to stopping distance was plaintiff's testimony that, moving thirty-five miles per hour, he could stop in one hundred feet, and that plaintiff and one of plaintiff's witnesses had testified that plaintiff's car had been moving at thirty-five miles per hour. Hence, say plaintiffs (in effect), defendant's own testimony (of the short distance plaintiff's vehicle was from the point of collision after defendant stopped) demonstrated that plaintiff could not have stopped short of the point of collision after defendant had stopped in plaintiff's path. This argument ignores defendant's testimony that his vehicle had been stopped in plaintiff's pathway four seconds before the vehicles collided. We assume this testimony of defendant is true. And we may also assume as true defendant's testimony that plaintiff's vehicle was seventy-five or one hundred feet away from the point of collision when defendant stopped, but the jury was not obliged to believe the testimony of plaintiff and his witness that plaintiff was moving thirty-five miles per hour. The jury could also give credence to plaintiff's testimony that, moving at a speed of thirty-five miles per hour, plaintiff could stop his vehicle in one hundred feet and accept defendant's testimony as true that defendant had been stopped approximately four seconds when the vehicles collided and thus indulge the inference that plaintiff was moving at a much lesser speed, when defendant stopped, than thirty-five miles per hour and reach the reasonable conclusion that if he had been looking carefully and had braked his car efficiently, plaintiff could have stopped safely short of the collision. We have thus far attended plaintiffs' argument.

But, in considering whether the evidence was sufficient in supporting the submission of plaintiff's contributory negligence in this primary negligence case, we should not confine ourselves to the time when plaintiff saw or, in the exercise of the highest degree of care should have seen and realized there was impending danger of a collision. We should take into account plaintiff's conduct, and the precautions the circumstances reasonably demanded, antecedent to as well as when plaintiff's own safety was immediately endangered. We have seen that plaintiff was moving under extremely heavy traffic conditions. He had passed an "intersection ahead" sign. He had actually seen the truck and defendant's car south of the intersection. He saw that the truck driver was signaling a left-turn, and then saw the truck, and presumably the vehicle ahead of it, execute a left turn. It seems reasonable to say he should have been alert to the possibility of a left-turn movement of defendant's car. The whole of these circumstances signaled potential danger, and we think it could be reasonably found that these circumstances called for commensurate precautionary measures, in the exercise of the highest degree of care, to look, and to look effectively, and so manage his motor vehicle as to avoid any danger of an actual collision and casualty.

■ And it may be added that, in the circumstances mentioned, we have the further opinion that it is reasonable to say plaintiff had the duty, in the exercise of the highest degree of care, to take the stated precautionary measures notwithstanding the provisions of Section 304.021, subd. 3, supra. The statute does not relieve the motor-vehicle driver, although he may have the advantage of the right of way under the statute, of the duty of maintaining a proper lookout while approaching and en-

tering an intersection. See Major v. Davenport, Mo.App., 306 S.W.2d 626; Orloff v. Fondaw, Mo.App., 315 S.W.2d 430, cases in which Section 304.021, subd. 1, RSMo 1949, V.A.M.S., was involved.

But it has been noted that Instruction No. 3 submits failure to stop, slow or swerve in the disjunctive. We are unable to see in what way slowing or slackening speed of plaintiff's vehicle would have avoided a collision. This is not a case wherein the evidence tends to show that a moving vehicle could have moved out of the pathway of another and approaching vehicle if the latter had been slowed up in its approach. Defendant, in effect, testified his westward movement was blocked completely by the truck which had preceded him in turning left. Neither was there evidence tending to show that plaintiff could have swerved safely to the right or to the left. Defendant in his brief suggests that plaintiff could have swerved to his right into Missouri Bottom Road which is thirty feet wide at the shoulder of Lindbergh; but, again we refer to the evidence of the presence of the truck on or partially on the west side of the pavement of Lindbergh. Vehicles were in movement southwardly to plaintiff's right and right rear, and defendant spoke of the northbound movement of vehicles on Lindbergh. We have not found evidence in the record tending to show how plaintiff could have safely avoided a collision by swerving.

Turning now to other contentions of error in giving the Instruction (No. 3)—the reading of it discloses that it imposed upon plaintiff the duty to lookout, to see and observe and to act in avoiding a collision upon the first appearance of danger, without limiting such duty to the exercise of the highest degree of care; and, moreover, the instruction did not submit negligence but advised that if plaintiff "failed to do so (to lookout, see and observe, and act upon the first appearance of danger in the avoidance, if he could, of a collision) *then you are instructed that such failure is negligence*". The instruction was prejudicially erroneous. Welcome v. Braun, Mo.Sup.,

319 S.W.2d 586. See also Johnson v. Presley, Mo.Sup., 320 S.W.2d 518. Even the erroneous instruction (No. 4) in the Welcome case submitted that plaintiff Welcome's hypothesized "acts and failure was negligence".

We have not ignored defendant-respondent's argument that there was no real issue of lookout inasmuch as plaintiff had testified that he had seen defendant stopped in the *inner northbound lane behind a truck* when plaintiff was *fifteen car lengths* from the truck; that plaintiff admitted he could stop his vehicle in one hundred feet; and that, consequently, there was no real issue as to whether or not plaintiff saw or could have seen the defendant in time to have avoided the casualty and any error in Instruction No. 3 in requiring an absolute duty in plaintiff to lookout, discover and act was harmless. There is no substance to this argument, and furthermore it is in conflict with defendant-respondent's argument elsewhere in his brief. Plaintiff's testimony is not to be construed as establishing the fact that plaintiff continuously had defendant's car and its movement within the field of his vision throughout the fifteen-car-lengths movement of plaintiff's vehicle to the intersection. Plaintiff had also testified that he had next seen defendant's vehicle "coming across the center line" when he, plaintiff, was thirty feet from defendant's vehicle. As noted, supra, plaintiffs in their brief had complained (and not entirely without reason) that the hypothesis in Instruction No. 3 that defendant "had come to a stop in the process of making a left-turn into Missouri Bottom Road" did not sufficiently submit the "position of defendant's auto when plaintiff was required to stop, swerve or slacken". In his argument in answer to this complaint, defendant-respondent said in his brief, that he "fails to see how said instruction charges the plaintiff with a duty to act at a time when defendant is stopped on his side of the road and waiting to make a left turn. Rather, respondent suggests that the language in the instruction, 'had come to a stop in the process of making a left turn

into Missouri Bottom Road', is clear and unambiguous and refers to the time that defendant had crossed the center line and traveled nine feet into the line occupied by the plaintiff."

Now attending defendant's Instruction No. 4, submitting contributing negligence of plaintiff wife—assuming plaintiff wife was a guest-passenger in the car driven by the husband, the instruction imposed a greater duty on plaintiff wife than the law requires. Toburen v. Carter, Mo.Sup., 273 S.W.2d 161; Ketcham v. Thomas, Mo. Sup., 283 S.W.2d 642; Happy v. Blanton, Mo.Sup., 303 S.W.2d 633; Cunningham v. Pulver, Mo.Sup., 327 S.W.2d 227. In the first paragraph of the instruction, it may be noted the jury was told that it was the duty of a passenger to exercise ordinary care to see and discover other vehicles upon a public highway and to warn the driver of the vehicle of the proximity of another vehicle. And, in the second paragraph, the jury was instructed that if the plaintiff wife allowed herself to be driven into collision with defendant's stopped automobile when she saw or by the exercise of ordinary care could have seen defendant's automobile in time thereafter to have warned the driver and by so doing to have thus avoided the collision, but failed to do so, then "you are instructed that such failure * * * is negligence * * *".

Although a guest-passenger is required to exercise ordinary care for his own safety, he is not required to exercise the same vigilance as the driver, nor does he have the same obligation to look for danger. Cunningham v. Pulver, supra. "In the absence of visible lack of caution of the driver or known imminence of danger, a guest may ordinarily rely upon a driver who has the exclusive control of the vehicle." Toburen v. Carter, supra [273 S.W.2d 161]; Cunningham v. Pulver, supra. And the duty of a guest, in the exercise of ordinary care, is to warn the driver of known imminence of danger, and, when the driver has been or is exercising a visible lack of

caution, to take such action as an ordinary or reasonably prudent person would take under the same or similar circumstances which could among other things include a lookout for dangerous situations. Happy v. Blanton, supra, 303 S.W.2d at page 639; Cunningham v. Pulver, supra. So it is not true in the circumstances of all cases that a guest in the exercise of ordinary care for his own safety must take the precaution to look out for dangerous situations. And moreover, if submissible, the precautionary duties the exercise of ordinary care demands of a guest in shown circumstances ordinarily should not be declared as a matter of law, but should be left to the jury. Boland v. St. Louis-San Francisco R. Co., Mo.Sup., 284 S.W. 141; Smith v. St. Louis-San Francisco R. Co., 321 Mo. 105, 9 S.W. 2d 939; Toburen v. Carter, supra; Thurman v. St. Louis Public Service Co., Mo. Sup., 308 S.W.2d 680; Ledkins v. Missouri-Kansas-Texas R. Co., Mo.Sup., 316 S.W.2d 564; Reed v. Coleman, Mo.App., 167 S.W.2d 125.

In Thurman v. St. Louis Public Service Co., supra [308 S.W.2d 684], cited and greatly relied upon by defendant-respondent, the questioned Instruction No. 2 apparently was not challenged on the ground that the instruction advised the jury, in effect, that, as a matter of law, a guest had the duty to take the precaution to look for danger and warn. And correctly set out in this court's opinion were the standards determinative of the plaintiff-guest's contributory negligence, and these standards were correctly used in determining the submissibility of the plaintiff's duty, in the exercise of ordinary care for her own safety, to look out for danger, and discover and warn. It was said, "the jury could reasonably find on defendant's theory that there was a manifest and imminent danger of a collision * * *; that there was a visible lack of caution on (driver) Taylor's part in driving at a high rate of speed toward * * * the intersection * * *". In the Thurman case, there also was another factor—possession and use of the vehicle by plain-

tiff quite as if title evidencing ownership were vested in her. The title to the vehicle was issued in the name of plaintiff's deceased husband, and Taylor was using the car with plaintiff's permission. Plaintiff's own testimony established that as between her and the driver Taylor, she had the superior right of possession and control of the vehicle with incident "obligation and opportunity 'to conduct and influence the situation for safety,'" unusual for a guest or passenger.

In the instant case, defendant had pleaded and there was some effort to prove that title to the vehicle in which plaintiffs were riding was in them jointly, but the fact was not established, neither did defendant offer any instruction submitting the fact; and there was no instruction tendered for the submission of the theory of joint enterprise. However the fact or factor of ownership and title might have affected plaintiff wife's duty as a passenger (this question we put aside) defendant, who had the burden of proof on the issue of the wife's contributory negligence, if he wished to establish the fact of joint ownership as affecting the wife-passenger's duty, should have established the fact as a matter of law or requested the submission of the fact to the jury.

We hold that defendant's Instruction No. 4 was prejudicially erroneous.

Now, as to the question whether the evidence would justify the submission by proper instruction of the contributory negligence of the wife assuming she was a guest, in failing to discover and warn of danger—there is the fact that the traffic at the time was "extremely heavy"; there was evidence which would support a conclusion that the plaintiff husband was driving at a speed of as much as forty miles; that, whatever speed of the vehicle, the speed of it was not retarded as the vehicle moved down grade, passed the intersection sign,

and to a point thirty feet north of the point of collision. We realize that these facts are tenuous support for the submission of a duty on the part of the wife guest, in the exercise of ordinary care for her own safety, to look out for some dangerous situation, but we cannot surely say it could not be reasonably believed that these facts, of which she must have been casually aware, although she said she was not looking, should have alerted her to lack of caution of the driver-husband, and reasonably called upon her to look for danger and upon observing it to warn him of it. According to defendant's testimony, he was approximately two seconds in moving in the left turn over to the stated position of his vehicle in the inner southbound lane where his vehicle had remained approximately four seconds until the vehicles collided—in all, six seconds, time, it reasonably could be said, for the wife to observe its movement and position and to give her husband a timely warning of the danger of colliding with it.

It would be neither useful nor decisive to examine the contentions, and arguments in support of them, concerning the propriety of giving Instruction No. 6, inasmuch as the causes are to be remanded because of errors in other instructions, Nos. 3 and 4. The trial judge and counsel no doubt will consider the attack upon Instruction No. 6 and, if the instruction be erroneous, will make such corrections as will obviate error upon a retrial.

The judgments for defendant should be reversed, and the causes should be remanded.

It is so ordered.

PER CURIAM.

The foregoing opinion by VAN OSDOL, Special Commissioner, is adopted as the opinion of the court.

All concur.