Clinton **FUGATE**, Plaintiff-Respondent,

v.

**ST. LOUIS–SAN FRANCISCO RAILWAY
COMPANY, a Corporation,
Defendant-Appellant.**

No. 7950.

Springfield Court of Appeals.

Missouri.

July 13, 1961.

Ward & Reeves, Caruthersville, for appellant.

Richard D. Moore, Green & Green, H. D. Green, West Plains, for respondent.

McDOWELL, Judge.

This action is for personal injuries sustained by plaintiff October 12, 1959, while driving alone in his 1953 Chevrolet pickup truck in a westerly direction over the main line of defendant's railroad at the unincorporated village of Burnham, Howell County, Missouri, when the truck was struck at 4:30 o'clock p. m., by a southbound freight train consisting of diesel engine, seven cars and a caboose.

The petition pleaded primary negligence. The answer denied the allegations of negligence and affirmatively pleaded contributory negligence. The issues were submitted to the jury solely on primary negligence in failing to sound statutory signals as the freight train approached the crossing.

At the close of plaintiff's case the defendant filed its motion for directed verdict, which was overruled. At the close of all the evidence defendant filed its motion for directed verdict which, likewise, was overruled. The jury returned a verdict for plaintiff for $5,000 and judgment was entered thereon.

Defendant did not file motion for new trial but did file its motion to set aside the verdict and judgment and to enter judgment for defendant in accordance with its motion for directed verdict, based upon the same grounds contained in the motion for directed verdict, among which was that plaintiff was guilty of contributory negligence as a matter of law. This motion was by the court overruled and defendant appealed.

On the day of the accident plaintiff was returning from Willow Springs, driving south on the Burnham gravel road which ran parallel with defendant's railroad. The weather was misty and foggy. The right window of his truck was closed and the one on the left was broken out and had a cloth over it. Before coming to Burnham he turned at right angles off the gravel road onto another gravel road which goes southwesterly through Burnham and crosses the railroad. The right angle turn is 100 feet from the crossing. There is an incline going west upon the track which begins shortly after the road leaves the gravel road paralleling the railroad and is around 15 feet lower than the crossing at the right angle turn to approach the railroad. The railroad is straight for a distance of 300 to 400 feet north of the crossing. There were weeds and sprouts 8 to 10 feet high on the north side of the road going over the tracks and on the east side of the railroad. There was a cedar tree on the right of way and east of the tracks about 250 feet north of the crossing. (By actual measurement 258 feet.) Plaintiff testified:

"Q. Mr. Fugate, as you proceeded up to the railroad track were you looking and listening for the sound of a train? A. Yes, sir, I looked and listened.

"Q. Did you stop before proceeding up to the track? A. About 40 feet.

"Q. What else did you do, shift gears? A. Yes, sir.

"Q. When you did stop you listened again? A. Yes, sir."

It is not clear from the plaintiff's testimony whether he stopped his truck to put it in second gear or stopped to see if a train

was coming. He testified that he looked both ways and never heard a whistle or a bell ring; that his hearing and eyesight were good. He stated:

"Q. As you proceeded after you stopped, what about the weeds at that time? A. They was up against the track and road and tall."

He stated that the weeds extended along the road to the track and from the crossing to the north along the right of way; that he continued to look and listen up to the track and did not hear the train whistle or the bell ring; that his truck was 15 or 16 feet long. He testified that there was a broken tie at the edge of the crossing and several holes filled with water; that there was another track west of the crossing. He gave this testimony:

"Q. State to the jury whether or not you did watch for a train as well as watching the right of way? A. Yes, sir."

He stated that the engine struck his truck at the right rear wheel and knocked it 40 to 45 feet off on the west side of the right of way and turned it around.

On cross-examination witness testified that he was familiar with the crossing; that he averaged making three or four round trips across it a week; that he knew the obstructions were there; that the cedar tree was on the right of way some 250 feet north of the crossing and that the weeds and brush were along the east edge of the right of way; that there wasn't anything about the crossing he did not know before the accident; that he knew it was a dangerous crossing. He testified:

"Q. How come you to stop 40 feet from the crossing itself? A. To shift gears."

He said he came to a dead stop; that he put the truck in second gear; that he put his brakes on; that the brakes were in good condition. He said he had a little steep incline to travel up to the track.

Witness testified he had been over the crossing several times since the accident and was asked:

"Q. Have you made any observation there to see how far north you could see when you were 10 feet east of the rails? A. Yes, sir.

"Q. How far north can you see up the track when 10 feet back? A. I would say 100 feet or so.

"Q. Couldn't you see up to the cedar tree? A. You could see the cedar tree.

"Q. Have you made observation when a train was coming from the north? A. Yes, sir.

"Q. How far north could you see the train when 10 feet from the rails? A. You couldn't see it any further than the cedar tree.

"Q. Did you make any observation how far north you could see the train when 5 feet east of the rails? A. No, sir.

"Q. When you get up within 5 to 8 feet of east rail you can see 600 or 700 feet up the tracks? A. No, sir.

"Q. How far did you see? A. Not over 300 feet."

Witness stated he was still driving about 10 miles per hour; that he is an experienced driver and might have been able to have stopped the truck going up the incline in 3 or 4 feet. He said he had not tried to see how quick he could stop. He gave it as his opinion that the train was traveling about 60 miles per hour. He stated that the track to the north from the crossing is straight for 400 feet. He did not know how high a diesel engine was but gave it as his opinion that it was 2½ times higher than his truck. There was evidence it

was 14½ feet high from the rails. Witness stated he had observed the noise of an approaching train and, as conditions were that day, could hear it 400 to 500 feet. He stated he did not hear the train but believed had it whistled or the bell been ringing he would have heard it. He gave this testimony:

"Q. Can you give the jury any reason why you couldn't have seen the train when up there in 5 feet of the crossing? A. On account of the weeds and brush growing up there."

He said the road bed had a ballast on each side of the track or, as stated, right up on the edge; that the weeds were 7 or 8 feet high. He testified:

"Q. Now you say there was some water standing there on the crossing? A. Yes, sir.

"Q. That doesn't interfere with your getting over the crossing? A. Chug holes there and if you have any speed will check your car up.

"Q. You were going 10 miles an hour and didn't have to slow down? A. No, sir.

"Q. These chug holes didn't cause you to get hit did they? A. No, sir, I don't suppose they did.

"Q. You mentioned the fact one of the cross ties had part broken off? A. Yes, sir.

"Q. That didn't interfere or cause the accident did it? A. It made a hole close to the rail.

"Q. You didn't slow down on account of that did you? A. No, sir.

Witness said he did not suppose that the defects caused him to get hit but you had to watch the holes and defects; that he did not slow down because of the defects in the crossing. Plaintiff, in his deposition, testified that when he stopped 40 feet from the crossing he could see north on the railroad track not over 150 feet.

Floyd White testified for plaintiff that he was acquainted with the crossing in question and stated:

"Q. Tell the jury about the weed growth up the track there from the crossing on the east side up toward the north? A. Well, there was a good weed growth there. You don't have no view very far. You have to get awful close before you could see it."

Witness stated he had never noticed any cedar tree. He said he crossed there each week one to three times; that in October you couldn't see until you got up close; that he had a similar experience.

On cross-examination he testified:

"Q. Mr. White, isn't it a fact when you get up there you could see a train 200 or 300 feet coming from the north? A. If you get up close to the track you could. If the front end of your car is sitting on the track probably you could see."

Six photographs were offered. Exhibits 1, 2 and 3 were taken from the east side of the crossing and 4, 5 and 6 from the west side. They show a heavy growth of weeds on the north side of the road and east side of railroad. Exhibit 2 was taken when the camera was 30 feet east of the crossing and shows weed growth and a sign on the railroad right of way which, under the evidence, is some distance north of the cedar tree. Exhibit 3 was taken 15 feet east of the crossing and shows weed growth. It plainly shows the rails leading north from crossing, the place where the cedar tree was and the railroad sign.

Exhibit 4 shows the crossing from the west side and the water holes on west side of track some distance therefrom. It shows the crossing to be level. Exhibit 5 shows the crossing from both sides of the track.

(We hereby attach a photographic copy of this exhibit.) These three exhibits fail to show the weeds as tall as the testimony discloses.

A. L. Rolufs, fireman on the freight train, testified for defendant: That he was approximately 250 or 275 feet north of the crossing when he first saw Fugate's truck coming toward the track about 20 to 25 feet away. He said when he saw the truck he could see the windows and man in the truck and could tell what kind of vehicle it was.

In our opinion we will refer to appellant as defendant and respondent as plaintiff, the position they occupied in the lower court.

The only error assigned is as to the trial court's action in refusing to give defendant's motion for directed verdict, offered at the close of the whole case, for the reason that under the evidence given by plaintiff, he was guilty of contributory negligence as a matter of law.

Decisions involving crossing accidents are numerous and the law with respect thereto is well settled. But, as stated in Flannagan v. St. Louis-San Francisco Ry. Co., Mo.App., 297 S.W. 463, 466: "The difficulty, of course, is in applying the law to the particular facts and circumstances in each case. Distances, speed, physical facts, and conduct of the injured party, together with all the other facts and circumstances, must be taken into consideration in passing upon the question of contributory negligence. Each case is more or less different on the facts, and no hard and fast rules may be laid down applicable alike to all cases."

The burden to prove that plaintiff was contributorily negligent was on the defendant. Pipes v. Missouri Pacific Railroad Company, Mo.Sup., 338 S.W.2d 30, 33 [2-4]; Zumault v. Wabash R. Co., Mo.Sup., 302 S.W.2d 861, 862 [1]. In determining this issue we ignore the evidence on the part of defendant tending to prove

plaintiff's contributory negligence for the reason the jury could believe or disbelieve such evidence. It follows, of course, that proof of plaintiff's negligence must appear from evidence adduced by him or from evidence which he concedes to be true or from binding documentary evidence, or by proof of facts and circumstances by defendant which leave room for no other reasonable inference, or from a combination of them, in order that a court correctly may declare plaintiff contributorily negligent as a matter of law. Pipes v. Missouri Pacific Railroad Company, supra; State ex rel. Thompson v. Shain, 349 Mo. 1075, 163 S.W.2d 967, 972, 973, 974; Borrson v. Missouri-Kansas-Texas R. Co., 351 Mo. 229, 172 S.W.2d 835, 847; Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972, 975 [1–4].

■ We bear in mind that contributory negligence is a jury question, unless it may be said from all of the evidence and reasonable inferences therefrom viewed in the light most favorable to plaintiff, the only reasonable conclusion is that plaintiff was negligent and that his negligence was a proximate cause of his injury. Creech v. Riss & Co., Mo.Sup., 285 S.W.2d 554; Slates v. Joplin Butane Gas Co., Mo.Sup., 315 S.W.2d 808, 812 [1, 2].

Contributory negligence as a matter of law can seldom be established by oral testimony offered solely by defendant. Usually it must appear in plaintiff's case or be established by testimony on the part of defendant which plaintiff concedes to be true. State ex rel. Thompson v. Shain, 349 Mo. 1075, 163 S.W.2d 967; Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972.

The rule was stated in Zumault v. Wabash Railroad Company, Mo.Sup., 302 S.W. 2d 861, 862 [2] that: "Before the court can declare that contributory negligence is shown as a matter of law, such negligence must clearly appear from admitted or conclusively proved facts. If reasonable men may honestly differ with respect to the inferences to be drawn from such facts, then the question whether the driver exercised the care required for his own safety is for the jury." (See numerous cases cited.)

■■ In the circumstances of this appeal plaintiff's evidence must be considered as true and he must be given the benefit of any and all reasonable inferences therefrom and the aid of any evidence offered by the defendant which is favorable to plaintiff. In order for defendant to maintain its position it must show that the evidence, even when considered most favorable to plaintiff, unequivocally establishes his contributory negligence. Rentfrow v. Thompson, 348 Mo. 970, 156 S.W.2d 700, 703; Lemken v. Brooks Truck Lines, Inc., Mo. Sup., 322 S.W.2d 803, 804 [1].

■ It has often been said "that a railroad track itself is a warning of danger, and that a highway traveler must exercise care commensurate with the circumstances—a motorist, the highest degree of care. [§ 304.010 RSMo 1949 and V.A.M. S]. If his view is obstructed, he must do whatever is necessary and possible to safeguard himself—by having his car under control, slowing up, stopping, listening, and continuing to look until he can see, even up to the crossing." Pipes v. Missouri Pacific Railroad Company, supra, 338 S.W. 2d at page 35; Borrson v. Missouri-Kansas-Texas R. Co., 351 Mo. 229, 172 S.W.2d 835. Further, his duty to look is not performed by looking only from a point at which his view is obscured, but he must look at a place where, if possible, he may see the track, i. e., he must look at a place where it is reasonably effective to do so; and that a motorist approaching a railroad crossing with which he is familiar, who fails to look or to see that which is plainly visible if he performs his duty to look, is contributorily negligent. Rischeck v. Lowden, 347 Mo. 426, 147 S.W.2d 650, 652 [2]; Lohmann v. Wabash R. Co., 364 Mo. 910, 269 S.W.2d 885, 892 [7–10]; Hackett v. Wabash R. Co., Mo.Sup., 271 S.W.2d 573, 578; Short v. Missouri-Kansas-Texas R. Co., Mo.Sup., 312 S.W.2d 50, 53 [1], 54

[2]. The law, as here stated, was declared by our Supreme Court in Pipes v. Missouri Pacific Railroad Company, supra, 338 S. W.2d at page 35 [5–7]. So far as we can find this is the last declaration on this subject by our Supreme Court, having been written September 12, 1960.

In Rader v. David, Mo.App., 207 S.W. 2d 519, 523, contributory negligence was defined as follows: "Contributory negligence is a want of due care on the part of a plaintiff claiming to have been damaged by the actionable negligence of another, combining and concurring with that negligence, and contributing to the damage as a proximate cause thereof, without which such damage would not have occurred."

To determine the issue presented we will review the pertinent facts of plaintiff's evidence and the conclusions resulting therefrom in view of the well-settled legal principles stated above.

The accident happened about 4:30 o'clock p. m., October 12, 1959. The weather was misty and foggy. Plaintiff was driving his 1953 pickup truck on an 18 foot gravel road which crossed defendant's tracks going in a westerly direction. Defendant's freight train was approaching the crossing from the north and struck plaintiff's truck near the right rear wheel causing the injuries complained of.

Plaintiff's evidence is that he was on his road home from Willow Springs traveling south parallel to the railroad; that he turned into a gravel road which runs west across defendant's tracks about 100 yards from the crossing; that at the place he entered the road running west it is about 15 feet lower than the tracks and that as he approached he had to go up a steep grade; that as he approached the crossing there were weeds and sprouts about 8 to 10 feet high, which obstructed his view of defendant's tracks to the north. He said these weeds and underbrush along defendant's right of way extended up to the crossing and up to the ballast along the tracks; that

there was a cedar tree about 250 feet north on the right of way (the actual measurement was 258 feet).

Plaintiff testified that as he proceeded up to the tracks he looked and listened for the sound of a train and heard none; that he stopped about 40 feet from the tracks to shift gears, to put his truck in second gear. He said when he stopped he listened again and looked both ways and never heard any sound; that the train did not whistle or ring its bell. He stated his hearing and eyesight were good.

Plaintiff testified that he started across the tracks at a speed of about 10 miles per hour; that his truck was 15 or 16 feet in length; that there was a broken tie on the edge of the crossing and another track west of the main line that he had to cross; that there were several holes or depressions on the crossing filled with water, which he looked for as well as watching for a train.

The evidence was very conflicting as to the giving of statutory signals but, under the rule of law, we consider only plaintiff's evidence, and, therefore, conclude that such statutory signals were not given.

Plaintiff testified he was familiar with the crossing prior to the accident; that he made three or four round trips across it each week; that he knew the cedar tree was on the right of way about 250 feet north and he knew the weeds and brush were along the east edge of said right of way; that there wasn't anything about the crossing that he did not know before the accident. He admitted the crossing was a very dangerous one. He stated the brakes on his car were in good condition; that he had made a dead stop before reaching the tracks; that the right window on his truck was closed; that the left one was broken out and covered with a cloth. He stated he never stopped the motor on his truck at any time.

Plaintiff testified that after the accident he had made observations at the crossing to see how far north he could see when

his truck was 10 feet east of the rails and said he could see 100 feet or so. He said he could see up to the cedar tree, which was 250 feet. He stated that he had observed when a train was coming from the north when he was 10 feet from the rails and could not see it further than the cedar tree. He testified that when the truck was within 5 to 8 feet of the rails he could not see up north on the tracks more than 300 feet; that he was an experienced driver and he may be able to stop his truck at 10 miles an hour within 3 or 4 feet. He gave it, as his opinion, the train was traveling 60 miles an hour; that he judged the track was straight north of the crossing for 400 feet. He did not know the height of the diesel engine but thought it was something like 13 or 14 feet high off the tracks. He said it was 2½ times higher than his truck. Witness admitted he had observed the noise of a train when approaching the crossing, and, on a day like that of the accident, he would judge he could hear it 400 or 500 feet but that he did not hear it at the time of the accident. He gave as the reason he did not see the train when his car was within 5 feet of the crossing was because of the weeds and brush growing there. He stated, on cross-examination, the weeds were 7 or 8 feet high. As to the condition of the crossing plaintiff stated:

"Q. Now you say there was some water standing there on the crossing? A. Yes, sir.

"Q. That doesn't interfere with your getting over the crossing? A. Chug holes there and if you have any speed will check your car up.

"Q. You were going 10 miles an hour and didn't have to slow down? A. No, sir."

He testified that the chug holes didn't cause him to get hit, neither did the broken cross-tie. He said the broken tie made a hole close to the rails but that he didn't slow down because it it. He admitted he testified in his disposition that he didn't suppose he could see over 150 feet from where he had stopped.

■ Plaintiff was very familiar with this dangerous crossing. By his own testimony he stopped 40 feet from the tracks, and, from that point, his vision was obscured. He stated he could not see over 150 feet north from the tracks but admitted he could see the cedar tree, which, by his testimony, was 250 feet. He, likewise, admitted that as he proceeded up the incline to the track, when within 5 to 8 feet of the tracks, he could see some 300 feet, yet, he did not see the train which, at that point, would have been clearly within his view. He said he listened and looked. He admitted that by a test he made he could hear a train coming 400 to 500 feet before it reached the crossing and could see up the track, he said, not more than 300 feet. Following the rule of law that "to look is to see what is plainly visible", we think that the evidence clearly shows plaintiff was negligent in not seeing this approaching train.

It is plaintiff's contention that the traveled road leading across defendant's tracks as he approached the crossing was uphill, narrow and had a ditch on the north side with chug holes and other obstructions in the road at the crossing; that the weather was misty and foggy and that under such circumstances plaintiff was under a duty to observe where he was driving as well as to keep a lookout for trains.

To support this contention he relies on Zumault v. Wabash Railroad Company, supra. In this case the ground of negligence relied upon by plaintiff was violation of a city ordinance. We have examined this authority and the facts are so different from those in the instant case as to not support plaintiff's contention.

Nicholas v. Chicago, B. & Q. Ry. Co., 239 Mo.App. 421, 188 S.W.2d 511, relied upon by plaintiff, likewise, is no authority for the reason of the difference in the facts

from the instant case. In this case the truck driver stopped, looked and listened at a point 30 feet from the railroad track, where he could see for 750 feet, and seeing and hearing no train, proceeded to cross. The court held that the driver was not contributorily negligent as a matter of law in failing to look again; that he could assume the train would not run at speed so great and dangerous as to collide with the truck; that the question of negligence was one for the jury.

In Threlkeld v. Wabash R. Co., Mo.Sup., 269 S.W.2d 893, relied on, Judge Hyde, speaking for the court, on page 894, discusses the cases involving the question of contributory negligence. He especially discusses Doyel v. Thompson, 357 Mo. 963, 211 S.W.2d 704, where the issue of contributory negligence was declared to be one for the jury under the facts in that case. In the Doyel case, the court stated the collision occurred on a misty, damp and foggy night; that it could be inferred that the engine headlight dimmers were on so that the headlight was not bright. The road near the crossing was rough with a mud hole in it. Plaintiff was not able to determine which track the train was on and acting in this emergency situation speeded up to get across. Clearly, these facts are so different from the facts in the instant case as to be no authority. We will not go into all of the cases analyzed by Judge Hyde in that opinion but he does hold that the cases must be decided upon the facts of each case and in the case he was deciding he held that plaintiff was contributorily negligent as a matter of law.

Plaintiff cites Fuzzell v. Williams, Mo. App., 288 S.W.2d 372, decided by our court. This was an automobile collision case submitted on primary and humanitarian negligence. We properly declared the law under the facts therein which is the same law as in the cases we have quoted from in this opinion. It does not support plaintiff's contention.

We find that plaintiff's negligence as a matter of law is established by his own evidence, in failing to have his car under control, slowing up, stopping, listening and continuing to look until he could see. The fact that he stopped 40 feet from the crossing and looked and listened did not fulfill his duty because his view at that point was obscured. He had a duty to look at a place where, if possible, he may have seen the train. He must look at a place where it is reasonably effective to do so. His testimony that when at a distance of 5 to 8 feet from the track, he could see not over 300 feet revealed that if he had stopped at that point his looking and seeing would have been effective. In fact, his testimony is that when within 10 feet of the track he could see the cedar tree which was 258 feet from the crossing.

It is the judgment of this court that plaintiff was guilty of contributory negligence as a matter of law. Judgment reversed and remanded with order that the court set aside the judgment in favor of plaintiff and enter judgment for the defendant.

STONE, P. J., and RUARK, J., concur.