**Joe L. HARRISON, Administrator of the Estate of David Harrison, Deceased, Plaintiff,**

v.

**Walter WEISBROD, Jr., Administrator of the Estate of Harry Bess, Deceased, Defendant-Appellant,**

v.

**Edward Charles SHIRA, Defendant-Respondent.**

**No. 8061.**

Springfield Court of Appeals.

Missouri.

June 5, 1962.

Powell & Jones, Dexter, for appellant.

Briney & Welborn, Joe Welborn, James E. Spain, Bloomfield, Frank Bild, St. Louis, for respondent.

McDOWELL, Judge.

Defendant, Edward Charles Shira, recovered a judgment in the Circuit Court of Stoddard County, Missouri, on his cross-claim against defendant, Walter Weisbrod, Jr., administrator of the estate of Harry Bess, deceased, in the sum of $4150 for personal injuries and property damages sustained in an automobile collision December 18, 1957, at the intersection of U. S. Highways 61 and 67 in Jefferson County, Missouri. From this judgment the administrator appealed.

On March 3, 1958, Joe L. Harrison, administrator of the estate of David Harrison, deceased, brought an action in the Circuit Court of Butler County, Missouri, naming as defendants, appellant, Walter Weisbrod, Jr., administrator of the estate of Harry Bess, deceased, and defendant, Edward Charles Shira, respondent, for the wrongful death of David Harrison resulting from an automobile collision while riding as a guest in the car owned and operated by Harry Bess.

On March 31, 1958, defendant, Shira, filed his crossclaim against the defendant-appellant, as administrator of the estate of Harry Bess, deceased, seeking to recover personal injuries and damages to his automobile on account of the alleged negligence of Harry Bess.

On April 17, 1958, appellant filed his verified motion to dismiss the crossclaim of defendant, Shira, alleging as reasons therefor that since Harry Bess died instantly, at the time of the collision, and before David Harrison died, there was no cause of action

for the death of David Harrison in existence at the time of the death of Harry Bess, and, since plaintiff had no right to sue the administrator of the estate of Harry Bess, deceased, respondent, Shira, could not interpose a crossclaim in this action. This motion was overruled by the court.

Appellant filed answer to the crossclaim of respondent wherein he pleaded a general denial and contributory negligence. Thereafter, by agreement, the hearing on the crossclaim was sent by change of venue to Stoddard County.

March 14, 1961, the cause was taken up for trial, a jury impaneled and sworn to try the crossclaim. Respondent's attorney made his opening statement, respondent Shira was sworn and took the witness stand to testify. Upon objection to his testimony in regard to the collision under Section 491.090 V.A.M.S., he was prevented from testifying. Thereupon respondent, by his attorneys, dismissed the crossclaim without prejudice and the jury was discharged.

On March 15, 1961, respondent filed his motion to set aside the dismissal of his crossclaim and to reinstate the same which motion was, by the court, sustained March 20, 1961.

April 5, 1961, appellant filed a verified motion to dismiss the crossclaim and for reasons stated that since respondent had voluntarily dismissed his crossclaim without prejudice after trial had started, the court had no jurisdiction over the subject matter or over the person of appellant, the administrator of the estate of Harry Bess, deceased. This motion was by the court overruled. The cause was submitted to the jury on primary negligence, to-wit: that the said Harry Bess drove into the intersection at the said time and place when the stop light suspended over the intersection was red for traffic in the direction in which said Bess was driving and in violation of the statutory rules and regulations of the road. The jury returned a verdict in favor of respondent, Shira, for $3,000 for his personal injuries and $1150 damages to his automobile.

The undisputed evidence shows that the collision occurred about 9:00 o'clock A.M., December 18, 1957, at the intersection of U. S. Highways 61 and 67, about a mile and half or two miles south of Festus in Jefferson County; that highways 61 and 67, a paved four lane highway, runs north from the intersection toward Festus and St. Louis; that highway 67 runs south toward Poplar Bluff and 61, a two lane highway, runs east toward St. Genevieve and Perryville; that there is a dividing space between the two south lanes and the two north lanes in the four lane highway, both north and south of the intersection; that there are also left turning lanes for cars turning to the left; that there are light signals at the intersection alternately showing red for stopping, green arrow for turning left and green for going ahead; that the collision occurred near the center of the intersection, with both cars facing in a westerly direction; that the front of the two cars collided; that respondent, Shira, had come south on 61 and 67 from near St. Louis and was going to Perryville, which is on 61; that Harry Bess had left Poplar Bluff, which is on 67, about 120 miles south of Festus and had planned and made arrangements to go to St. Louis to get his wife and daughter; that respondent Shira sustained personal injuries and his car was damaged in an agreed sum of $1150; Bess was killed instantly and David Harrison, his passenger, died later the same day.

William Leland Reagan, a timber worker, testified for respondent that on December 18, 1957, he lived 18 miles south of Festus; that on that day he traveled north on 67 in a Ford automobile and stopped on a red light in the outside lane of the intersection; that he saw one car, and perhaps more, on 67 headed south; that as the green arrow came on the one car, he remembered seeing on 67 facing south, which had stopped, started to make a left turn to go toward Perryville on 61, and, at the same time, another automobile came from the east on 61, crossed the intersection in front of witness and the collision occurred; that he was not

sure whether or not there were any other cars in front of the Shira car but, if there were, he did not know what became of them; that his green light came on and he drove across the intersection, parked his car, and returned to the scene of the collision; that he saw the respondent get out of the car that had turned to its left and saw two men in the other car, neither of them moved; that he was still at the scene when the Highway Patrolman arrived; that he did not talk to him or tell him he saw the collision; that a few days later he saw a notice in the St. Louis paper inquiring if anyone had seen the collision and, in response to this notice, called the telephone number therein, collect, reported he had seen the collision; that no name was given in the notice and witness did not know with whom he talked.

On cross examination Reagan testified that he did not know whether Shira was the man driving the car which turned to the left.

To impeach the witness, Reagan, appellant read in evidence a portion of his deposition in which he stated, when shown one of defendant's exhibits, a picture of the Bess car, that he did not think it was the car involved in the collision; that he did not remember the date of the accident and he would not say whether or not Charles Shira had stopped at the intersection.

Highway Patrolman, Sergeant R. E. Butler, testified for respondent: That he arrived at the scene about 9:06 A.M., just after the collision occurred; that there was no one afoot when he arrived; that he did not recall seeing the witness, Reagan, and had no conversation with him; that he inquired of the people at the scene of collision if any had seen it and no one claimed to have seen it; that while there, respondent Shira told him that when he stopped at the stop sign, one car had stopped in front of him, and "When the light changed we started out, and this car hit me head-on", and that the car in front of him must have gone on; that he did not see the Bess car until it hit him.

Respondent, Shira, did not testify.

Appellant filed a motion for directed verdict at the close of the evidence and, among the reasons assigned, stated that the evidence showed that Shira was guilty of contributory negligence as a matter of law. This motion was overruled. Likewise, appellant's motion for directed judgment in accordance with his motion for directed verdict at the close of all of the evidence and in the alternative for a new trial was overruled.

The evidence shows that Harry Bess died December 18, 1957; that Shira's crossbill was filed March 31, 1958. Appellant, Weisbrod had previously thereto been appointed as administrator of the estate of Harry Bess, deceased.

■ Appellant assigns as error the action of the trial court sustaining respondent's motion to reinstate his crossclaim after respondent had been permitted to voluntarily dismiss the same without prejudice. It is contended that the order of dismissal is not a judgment and since the adoption of the new Code of Civil Procedure in 1943, such order cannot be set aside by the trial court under Supreme Court Rule 75.01, V.A.M.R., Section 510.370 RSMo 1959, V.A.M.S., nor under any other rule or statute.

At common law a judgment remained in the breast of the court during the term at which the judgment was rendered, and could be set aside, or modified by the court, as justice required, during said term, regardless of motions of any kind. Wooten v. Friedberg, 255 Mo. 756, 198 S.W.2d 1, 5[1]. However, under the new General Code for Civil Procedure that period is limited to thirty days after the entry of judgment. Civil Rule 75.01; Section 510.370 RSMo 1959, V.A.M.S.; Mid-States Equipment Corp. v. Hobart Welders S. & S., Mo.App., 233 S.W.2d 757, 758[1].

It was held in the last cited authority, 233 S.W.2d page 758[3], that:

"Under Section 119 of the Code, supra, the trial court, during the thirty day period

after judgment, has the same inherent power, for good cause shown, to vacate a judgment as it did during the judgment term under the old practice. State ex rel. Iannicola v. Flynn, 239 Mo.App. 721, 196 S.W.2d 438."

In the case at bar the trial court granted a motion for reinstatement of the cause of action and though the order recited that the motion to reinstate was sustained, in legal contemplation it will be deemed an action of the court of its own initiative, made at the suggestion of defendant. Clearly, the court did not exceed its jurisdiction as claimed by appellant. Mid-States Equipment Corp. v. Hobart Welders S. & S., Mo. App., 233 S.W.2d 757, 758[4].

■ We agree with appellant that respondent's voluntary dismissal of his cross-claim was not a dismissal with prejudice, nor a final adjudication upon the merits which would bar a subsequent action for the same cause nor was it an appealable judgment. Crispin v. St. Louis Public Service Co., 361 Mo. 866, 237 S.W.2d 153, 155 [1]; Potter v. McLin, 240 Mo.App. 708, 214 S.W.2d 751; Fenton v. Thompson, 352 Mo. 199, 176 S.W.2d 456, 459[4, 5].

In 17 Am.Jur., Dismissal, etc., § 113, page 179, the law is stated: " * * * Where at the close of all the evidence, the plaintiff by leave of court dismisses his action without prejudice and subsequently the court makes an order vacating the dismissal, the effect of the vacation of the order of dismissal is to leave the cause of action as one pending and undetermined, and the procedure to be followed is a trial de novo."

In 17 Am.Jur., Dismissal, etc., § 122, page 185, the law is stated: "On general principles, an oral motion for vacation of a dismissal and reinstatement of the action is undoubtedly sufficient where made before expiration of the term, since the court is then in position to vacate the dismissal on its own motion in the interest of justice and should treat the motion as a suggestion for the exercise of the power of the court. * * *" Arpe v. Mesker Bros. Iron Co., 323

Mo. 640, 19 S.W.2d 668; Snyder v. Christie, Mo.App., 272 S.W.2d 27; Fiorella v. Fiorella, 241 Mo.App. 180, 240 S.W.2d 147, 151 [6].

■ Under the new Code the right to dismiss, without prejudice is not an absolute right. Smith v. Taylor, Mo.App., 289 S.W. 2d 134, 140[7]. The cases indicate that one reason for requiring a court order is for the purpose of giving persons affected an opportunity to object. Yet, the right to dismiss has been a well-established right throughout all of our procedure. McClellan v. Sam Schwartz Pontiac, Inc., Mo. Sup., 338 S.W.2d 49, 53[2].

■ Appellant concedes that before the adoption of the new Civil Code the trial court had inherent power to set aside most judgments or orders during the same term but, under the new Code such voluntary dismissal was not a judgment, and, therefore, the trial court was without power to reinstate the cause during the first thirty days after judgment. Appellant cites no authority to support this contention and we think that the power of the trial court on its own motion to set aside its order or judgment under the new Code is the same as it was at the common law except the time such action could be taken by the trial court is limited to thirty days instead of being confined to the term at which such order or judgment is rendered. We find that the adoption of the new Civil Code, Section 510.370 RSMo 1959, V.A.M.S., and Supreme Court Rule 75.01 did not, in any way, affect the inherent power of the trial court acting within thirty days, from setting aside its judgment or order. We find against appellant on this contention.

Under sub-section (B) appellant claims error on the part of the trial court in setting aside the order of dismissal and reinstating the cause for trial; in overruling appellant's verified motion to dismiss respondent's crossclaim; in overruling appellant's motion for directed verdict at the close of all of the evidence; for the reason that after

respondent voluntarily dismissed his cross-claim without prejudice, he was not entitled to have it reinstated; that the court no longer had any jurisdiction over the subject matter or the person of appellant, and had no right or authority to set aside the voluntary order of dismissal; that respondent's only recourse was to file a new cause of action unless otherwise barred by law.

In the instant case the defendant's cross-claim, if not reinstated, was barred under the nonclaim statute for the reason that more than nine months had passed.

■ We do not agree with appellant's contention that the trial court, after permitting respondent to take a voluntary nonsuit, was deprived of jurisdiction over the subject matter or over the person of appellant or that he had no authority to set aside the voluntary order of dismissal, and that respondent's only recourse was to file a new cause of action unless otherwise barred by law.

The law was declared in Mid-States Equipment Corp. v. Hobart Welders Sales & Service, supra, 233 S.W.2d page 758[3] that: "Under Section 119 of the Code, supra, the trial court, during the thirty day period after judgment, has the same inherent power, for good cause shown, to vacate a judgment as it did during the judgment term under the old practice."

■ The effect of the subsequent order of the trial court vacating the dismissal is to leave the cause of action as one pending and undetermined, and the procedure to be followed is a trial de novo. 17 Am.Jur., § 113, page 179; 17 Am.Jur., § 122, page 185.

Under this authority we find that the voluntary nonsuit, when set aside by the trial court on its own motion, reinstated the cause of action as it was pending in the court prior to the voluntary dismissal; that the trial court did not lose jurisdiction over the subject matter or of the person by setting aside the voluntary nonsuit and reinstating the case for trial.

Appellant's authorities to sustain his contention under this alleged error no way conflict with the law as we have herein stated.

In appellant's argument he quotes from Supreme Court Rule 67.03, which is as follows: "A dismissal without prejudice permits the party to bring another action for the same cause, unless the action is otherwise barred." He argues that there was no similar statute before the enactment of the new Code in 1943. We agree with this contention. He states that under Civil Rule 67.01, which is the same as Section 510.130 RSMo 1959, V.A.M.S., to-wit: "A plaintiff shall be allowed to dismiss his action without prejudice at any time before the same is finally submitted to the jury, or to the court sitting as a jury, or to the court, and not afterwards."

He says that both of these rules are different to the statute as it existed before the new Code was adopted. He then reaches this conclusion: "Therefore, it is apparent that the Legislature intended in 1943, and the Supreme Court intended when it adopted its Rules of Procedure, that when a cause is dismissed without prejudice, it could not be reinstated, and that the only recourse was to bring another action for the same cause."

■ We find that appellant's argument does not take into consideration the fact that the trial court has inherent power within thirty days after the order or judgment of dismissal to set such orders aside and reinstate the case. Section 510.370 RSMo 1959, V.A.M.S.; Supreme Court Rule 75.01, V.A.M.R. We hold that this inherent power of the trial court was not changed by the adoption of the new court Rules of Civil Procedure.

Appellant cites Kane v. Kaysing Iron Works, Mo.App., 89 S.W.2d 532 as authority for his contention that after voluntary nonsuit was taken the trial court has no power to reinstate the cause within thirty days after judgment. This case merely

held that a party voluntarily dismissing his cause of action after a jury was sworn and a motion to reinstate was overruled, could not appeal. The law is well settled on this point because there was no final judgment affecting the rights of the parties as provided by statutes controlling appeals. That, in no way, supports appellant's contention that the trial court could not within thirty days after judgment set aside the order granting respondent the right to dismiss voluntarily or within such time reinstate the cause of action. None of the authorities cited by appellant supports his contention. We find the trial court did not err as claimed by appellant under sub-section (B) of point I.

Under point II appellant contends the court committed error in refusing to direct a verdict for him because under all of the evidence respondent was guilty of contributory negligence as a matter of law.

Appellant states that under the undisputed evidence respondent stopped at the intersection and then started forward to make a left turn and while in the act of turning collided with the Bess car; that respondent failed to see the Bess car before the collision although it was broad daylight and there was nothing to obstruct his view; that he was guilty of contributory negligence as a matter of law in failing to keep a lookout for and to see the Bess car, and that is true though the left turning light was in respondent's favor.

■■■ The burden of proving respondent's contributory negligence is on appellant. Before the court can declare that contributory negligence is shown as a matter of law, such negligence must clearly appear from admitted or conclusively proved facts. If reasonable men may honestly differ with respect to the inferences to be drawn from such facts then the question whether the driver exercised the care required for his own safety is for the jury. Zumault v. Wabash Railroad Co., Mo.Sup., 302 S.W.2d 861, 862 [1, 2]; Fugate v. St. Louis-San Francisco Ry. Co., Mo.App.,

348 S.W.2d 718, 723 [3]; Creech v. Riss & Co., Mo.Sup., 285 S.W.2d 554; Slates v. Joplin Butane Gas Co., Mo.Sup., 315 S.W.2d 808, 812 [1, 2]; Stonefield v. Flynn, Mo.App., 347 S.W.2d 472, 476 [3].

■■■ Under the law it is the duty of a motorist entering an intersection, to exercise the highest degree of care and maintain a careful and vigilant outlook ahead and laterally, and to see what a person in the exercise of the highest degree of care for the safety of himself and others would be expected to see under similar circumstances. For where one is charged with a duty to look, and to look is to see, he must be held to have seen what looking would reveal. A green light does not relieve of this duty nor does it confer an absolute right to proceed across the intersection regardless of the movement of other traffic. The motorist is not entitled to rely solely on the favorable signals; nor is he entitled to drive blindly into the intersection without looking. The duty to be exercised remains commensurate with the circumstances, one of which, of course, is the green light in his favor. Witt v. Peterson, Mo.Sup., 310 S.W.2d 857, 860 [1–4]; Politte v. Miller, Mo.App., 301 S.W.2d 839, 842 [1, 2]; Douglas v. Whitledge, Mo. App., 302 S.W.2d 294, 298 [1, 3, 4]; Schmittzehe v. City of Cape Girardeau, Mo.Sup., 327 S.W.2d 918, 923; Lamfers v. Licklider, Mo.Sup., 332 S.W.2d 882, 887 [3]; Orloff v. Fondaw, Mo.App., 315 S.W. 2d 430, 433 [4]; Lilly v. Boswell, 362 Mo. 44, 242 S.W.2d 73; Weis v. Melvin, Mo. Sup., 219 S.W.2d 310; Collier v. St. Louis Public Service Co., Mo.App., 298 S.W.2d 455, 459 [3–5].

■■■ A motorist favored with a green light traffic signal has the right to assume that non-emergency vehicles approaching an intersection street will obey the red light and stop and to rely upon that assumption until he knows or, by the exercise of the highest degree of care should know the contrary. Politte v. Miller, supra, 301 S.W.2d page 842 [1–5].

■ The undisputed evidence is that the collision in question occurred near the center of the intersection; that respondent was driving south and stopped in the lane for left turn traffic only, waiting for the electric signal to indicate left; that at the time there was another car in front of him; that the left turn signal came on and the cars started out to make a left turn; that near the center of the intersection the Bess car hit respondent's car headon; that he did not see the Bess car until it hit him. The evidence is undisputed that after the collision both cars were facing west. The only eye-witness to the accident testified that he was coming north on highway 67 and stopped for the red light at the intersection; that while stopped he observed respondent's car on the opposite side of the highway, waiting for a left turn. He did not remember whether there were more cars stopped in that lane at the time or not. He testified that when the green arrow came on for respondent to make a left turn he started turning left. He didn't know how far in the turn he was when witness saw the Bess car coming from the east, passing in front of him and saw the collision. He was not sure how fast the Bess car was going. There was no evidence offered by appellant from which the jury could determine where the Bess car came from or as to whether there was another car in front of respondent. There was no evidence offered as to the speed of the Bess car or as to whether respondent could have seen it had he been looking in time to have avoided a collision. We find that appellant failed to meet the burden of proof to show that respondent was guilty of contributory negligence as a matter of law. We find under the evidence that the question of contributory negligence was one for the jury and that the trial court properly submitted that issue to it.

Under point III appellant seeks to have the court declare that plaintiff, Joe L. Harrison, administrator of the estate of David Harrison, deceased, could not successfully maintain a cause of action against appellant, Walter Weisbrod, Jr., administrator of the estate of Harry Bess, deceased, since Bess died before Harrison and no suit for the wrongful death of Harrison was pending at the time Bess died, therefore, no action survived in favor of the administrator of the Harrison estate against the administrator of the estate of Harry Bess; that the petition filed by the administrator of the estate of David L. Harrison, deceased, against the administrator of Harry Bess, deceased, and against respondent, Shira, did not state a good cause of action because it did not allege Harrison died first; that since plaintiff, Joe L. Harrison, administrator of the estate of David Harrison, deceased, could not state a cause of action against appellant, as administrator of Harry Bess, deceased, the trial court had no jurisdiction over the subject matter in plaintiff's petition and had no jurisdiction over the person of appellant, and, therefore, respondent, Shira, cannot assert nor maintain a crossclaim against the appellant.

■ We agree with appellant's contention that an action for wrongful death can be maintained only as provided by statute; that no cause of action for wrongful death existed at common law. Nelms v. Bright, Mo.Sup., 299 S.W.2d 483, 487 [2–4]; Knorp v. Thompson, 352 Mo. 44, 175 S.W.2d 889; Plaza Express Co., Inc., v. Galloway, 365 Mo. 166, 280 S.W.2d 17, 18 [4].

■ Respondent's contention is that an action for wrongful death may be maintained against the estate of a deceased tort-feasor and this is true even though the tort-feasor died prior to the institution of the action.

The only statute that authorizes an action for damages for wrongful death is Section 537.080, RSMo 1959, V.A.M.S., which reads:

"Action for wrongful death—who may sue. Whenever the death of a person shall

be caused by a wrongful act, neglect or default of another, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, which damages may be sued for and recovered * * *".

Appellant contends this section provides only for an action against the person or corporation causing the wrongful death; that it does not provide for an action against a person's personal representative or administrator; that this section does not provide for the survival of a cause of action the deceased may have had but for a new cause of action.

In Frazee v. Partney, Mo.Sup., 314 S.W.2d 915, the Supreme Court held that causes of action accrued at the time of death and not at the time of discovery of identity of alleged tort-feasor. On page 918 [3] of 314 S.W.2d, the court stated: "Our death act creates a new and different cause of action not known to the common law."

In Goldschmidt v. Pevely Dairy, 341 Mo. 982, 111 S.W.2d 1, 4 [7, 8], the court stated: "The wrongful death statute * * * created in the dependents of the one killed a new cause of action, and was not a provision for the survival of any action the party injured may have had." Hendricks v. Kauffman, 340 Mo. 74, 101 S.W.2d 84, 86 [2–4].

Appellant contends that since Bess died before Harrison and no suit for wrongful death of Harrison was pending at the time Bess died, no action survives in favor of the administrator of the estate of Harrison against the administrator of Bess under paragraph 1 of Section 537.020 V.A.M.S., as amended in 1955.

This section provides: "Actions for personal injuries or death not to abate by reason of death.—1. Causes of action for personal injuries, other than those resulting in death, whether such injuries be to the health or to the person of the injured party, shall not abate by reason of his death, nor by reason of the death of the person against whom such cause of action shall have accrued; but in case of the death of either or both such parties, such cause of action shall survive to the personal representative of such injured party, and against the person, receiver or corporation liable for such injuries and his legal representatives, and the liability and the measure of damages shall be the same as if such death or deaths had not occurred. Causes of action for death shall not abate by reason of the death of any party to any such cause of action, but shall survive to the personal representative of such party bringing such cause of action and against the person, receiver or corporation liable for such death and his or its legal representatives.

"2. The right of action for death or the right of action for personal injury that does not result in the death, shall be sufficient to authorize and to require the appointment of a personal representative by the probate court upon the written application therefor by one or more of the beneficiaries of the deceased. The existence of the right of action for death * * * shall be sufficient to authorize and to require the appointment of a personal representative for the person liable for such death or injury by the probate court upon his death upon the written application of any person interested in such right of action for death or injury."

Appellant contends that under paragraph 2 of Section 537.020 (above set out) an action can be brought against the representative of the wrong-doer only when the right of action for the wrongful death is in existence; that since there was no cause of action in existence against Harry Bess for the wrongful death of David Harrison at the time Bess died, the administrator of

David Harrison's estate had no cause of action against the administrator of Harry Bess; that the petition filed by the administrator of the estate of David Harrison against appellant and Shira, defendant-respondent, did not state a cause of action; that it was necessary for plaintiff, in order to state a cause of action, to plead David Harrison died before Harry Bess.

Supreme Court Rule 55.06, being the same as Section 509.050 RSMo 1959, V.A. M.S., and Nelms v. Bright, Mo.Sup., 299 S.W.2d 483, 487[3] are cited to support this contention. An examination of these authorities show they do not sustain appellant's contention.

In State ex rel. Anderson v. Dinwiddie, 359 Mo. 980, 224 S.W.2d 985, 989, the law is stated that an action for death shall not abate by reason of the death of the party liable for such, but shall survive against the legal representatives of such party and this is true even though the tort-feasor may have died before the suit was brought.

At the time the Dinwiddie case, supra, was written, the last sentence of paragraph 1 of Section 537.020 read: "Causes of action for death shall not abate by reason of the death of a party liable for such death, but shall survive against the legal representatives of such party."

The last sentence of paragraph 1 of Section 537.020, as amended, reads: "Causes of action for death shall not abate by reason of the death of any party to any such cause of action, but shall survive to the personal representative of such party bringing such cause of action and against the person, receiver or corporation liable for such death and his or its legal representatives."

From the changes, as above, appellant concludes that a suit in court for wrongful death must be brought before the death of the person who commits the wrongful act, and that the Dinwiddie case is not in point.

In State ex rel. McCubbin v. Ginn, Mo.Sup., 347 S.W.2d 119, the action was for wrongful death wherein both parties were killed instantly. In discussing Section 537.020 RSMo 1959, Judge Storckman, in a concurring opinion, on page 125, stated:

"Not only does § 537.020 RSMo 1959, V.A.M.S., provide for the survival of actions for personal injuries and wrongful death against the legal representatives of deceased persons, but it also authorizes and requires the probate court to appoint such a representative where the sole purpose is to prosecute a right of action for death or personal injury."

We agree with respondent that the present statute plainly states that the action will survive "against the person, receiver or corporation liable for such death and his or its legal representatives". This is what the statute said in the Dinwiddie case and we agree with respondent that that case is still in point. See Clarke v. Organ, Mo.Sup., 329 S.W.2d 670, 678, wherein the court stated that an action for wrongful death can be brought against the administrator of a deceased wrongdoer.

It is true that prior to July 19, 1948, actions for wrongful death did not survive the death of the wrongdoer. But, under the present statute the legislature expressed their intention that an action for wrongful death should survive the death of the wrongdoer. Under the present statute we think there can be no doubt but such actions do survive. The present statute is more specific and more detailed than the change of July 19, 1948, which first provided for such survival.

We do not agree with appellant that the words of the statute "any party to such cause of action", as Section 537.020 now reads, means that a suit must be brought before the death of the tort-feasor. A definition of a cause of action in Black's Law Dictionary, Third Edition, 1944, is "Matter for which an action may be brought". We find that one can be a party to a cause

of action before a lawsuit is begun. Appellant assumes that "cause of action" means a "suit". We find this to be an incorrect assumption.

In Chestnut v. Mertz, Mo.App., 144 S.W. 2d 194, 196 [2, 3], the court states: "A cause of action consists of those facts, as between two parties, entitling one of them to a judicial remedy of some sort against the other for the redress of a wrong."

Thus, the change in the statute does not mean that a lawsuit must have been begun before the death of the tort-feasor. All that is necessary is that the cause of action be in existence.

Appellant contends that because Harry Bess died before David Harrison, no wrongful death action can be brought since Bess was dead at the time of Harrison's death.

The wording of Section 507.080 RSMo 1959, V.A.M.S., is clear and provides for an action where a death is caused by a wrongful act, neglect or default of another. So the cause of action is based upon the negligence or wrongful act of the tort-feasor, and this wrongful act or neglect was in existence before the death of Harry Bess.

Under the facts in the instant case we find that the trial court had jurisdiction over the subject matter and person of appellant and that respondent, Shira, could maintain his crossclaim against appellant. Section 510.170 RSMo 1959, V.A.M.S. The authorities cited by appellant under subhead (H) in no way support his contention that the administrator of the estate of David Harrison did not state a cause of action against appellant and respondent, or, at least, a cause of action which could be amended.

Jurisdiction is not dependent upon the sufficiency of a complaint or the validity of plaintiff's demand. Jurisdiction over the subject matter means the power and authority to hear and determine certain classes of cases. Circuit Courts of this state have jurisdiction to hear and determine cases of wrongful death, especially this is true where there has been no judicial determination as to which party died first.

Appellant cites Supreme Court Rule 55.49 and Section 509.460 RSMo 1959, V.A.M.S.; American Constitution Fire Assur. Co. v. O'Malley, 342 Mo. 139, 113 S.W.2d 795, 802[13, 14]; and State ex rel. Carney v. Higgins, Mo.Sup., 352 S.W.2d 35.

We have examined these authorities and find they do not sustain appellant's contention.

Judgment affirmed.

RUARK, P. J., and STONE, J., concur.