**Frank D. CLAUSER, Plaintiff-Appellant,**

v.

**Alexander JENNINGS, Defendant-Respondent.**

No. 8727.

Springfield Court of Appeals.

Missouri.

April 26, 1968.

**4**

Schnapp, Graham & Reid, Maurice B. Graham, Fredericktown, for plaintiff-appellant.

E. L. McClintock, Jr., Flat River, for defendant-respondent.

STONE, Judge.

In this damage suit for personal injuries alleged to have been sustained in a vehicular collision, plaintiff Frank D. Clauser appeals from the adverse judgment entered upon a unanimous jury verdict for defendant Alexander Jennings. The sole point relied on here is that the trial court erred in giving defendant's instruction 6, which submitted the alleged contributory negligence of plaintiff in failing to swerve or to slacken speed and swerve. There is no attack upon the form of instruction 6, and the only complaint is that "there was no evidence of contributory negligence of the plaintiff to support the giving of such instruction." Cf. Kratzer v. King, Mo., 401 S.W.2d 405, 407(1). This requires a factual review, during which we remain mindful of the injunction that, in determining the sufficiency of the evidence to support the submission in instruction 6, we must consider the evidence in the light most favorable to defendant, must accord to him the benefit of all helpful inferences reasonably deducible therefrom, and must disregard plaintiff's evidence except as it tends to support the grounds of contributory negligence submitted in the instruction. Jackson v. Skelly Oil Co., Mo. (banc), 413 S.W.2d 239, 242(2); Tomlin v. Alford, Mo., 351 S.W.2d 705, 711(5); Highfill v. Brown, Mo. (banc), 340 S.W.2d 656, 661(7); Dial v. Seven-Up Bottling Co., Mo., 373 S.W.2d 53, 57(8); Emert v. St. Louis Public Service Co., Mo., 370 S.W.2d 366, 368–369(3); Slates v. Joplin Butane Gas Co., Mo., 315 S.W.2d 808, 813(5); Schmidt v. Windish, Mo., 304 S.W.2d 891, 894(3).

The accident under consideration occurred about 10:30 A.M. on Saturday, September 12, 1959, a warm, dry day, at the intersection of Missouri State Highway 32, an

east-west highway with a two-lane blacktop roadway 24 feet in width, and Iron County Route Y, a north-south road. This was a "T-intersection" in that Route Y entered from the north but did not extend to the south of Highway 32; and it also may be described as a "Y-intersection" or a "delta intersection" in that Route Y flared out and its hard-surfaced roadway bifurcated as it approached Highway 32, so that the mouth of Route Y was about 55 feet in width, east and west, at the north edge of Highway 32. The entire mouth of Route Y was relatively level, and the space between the curving prongs of the forked hard-surfaced roadway of Route Y was graveled. Near the center of that graveled area between the curving prongs and at a point some 8 to 10 feet north of the north edge of the blacktop pavement on Highway 32, a red octagonal "STOP" sign, mounted on a wooden post 7 or 8 feet above ground level, faced toward the north thus directing traffic on Route Y to stop before entering Highway 32. Immediately east of the mouth of Route Y there was a dirt and gravel shoulder about 4 feet in width on the north side of the 24-foot blacktop roadway on Highway 32.

Plaintiff, then 17 years of age, was driving his father's 1959 Chevrolet sedan, in which his parents, two cousins and an aunt also were riding, in a westerly direction on Highway 32, approaching the intersection with Route Y from the east. Defendant, a farmer then 69 years of age who resided in that neighborhood, was driving his Ford pickup, in which one Robert L. Crocker also was riding, in a southerly direction on Route Y, approaching the intersection from the north and intending to make a left turn to the east onto Highway 32.

When plaintiff in the westbound Chevrolet, then traveling at a speed estimated by him at 45 miles per hour, was (so he said) "maybe 200 or 300 feet" east of the intersection, he first noticed defendant's Ford pickup then "back about 30 or 35 feet" from Highway 32 and thus in that fork of the bifurcated roadway at the mouth of Route Y which curved to the east of the "STOP" sign. Defendant's pickup was moving "slowly" at a rate of speed which plaintiff first stated he could not estimate but subsequently reckoned at "maybe 5 miles an hour, between 5 and 10." We interrupt plaintiff's account to note in this connection that, frankly admitting the Ford pickup did *not stop in obedience to the sign*, defendant estimated its speed at 12 to 15 miles per hour as he approached and moved onto the blacktop pavement of Highway 32, and that witness Crocker, the passenger in the pickup, estimated its speed at that time at 10 to 12 miles per hour. Whatever the precise speed of the pickup may have been, plaintiff anticipated that it would yield the right-of-way to him and did not change the speed of his Chevrolet when he first sighted the other vehicle—"I wanted to hold it [my speed] the same." However, defendant's pickup "kept moving on out * * * instead of stopping at the stop sign," so "when I [plaintiff] got up closer"—"when I finally got about 60 or 75 feet [distant], I finally began to realize he wasn't going to stop" and "I applied my brakes and skidded." "When I first applied them [the brakes] * * * he [defendant] was just pulling into the westbound lane [of the two-lane blacktop pavement on Highway 32], his front was just in it." Investigating trooper Mills testified that he found "tire marks or skid marks" which "measured 50 feet * * * with the front wheels and 60 feet with the rear wheels * * * leading up to where the vehicle [plaintiff's Chevrolet] actually stopped." These tire marks were in the westbound or north lane of the two-lane pavement on Highway 32, with the marks made by the right wheels of the Chevrolet "in the neighborhood of 3 or 4 feet" south of the north edge of the pavement.

Since defendant was making a left turn *to the east onto Highway 32*, his Ford pickup was headed in a southeasterly direction at "about a 45 degree angle" as it entered and moved across the westbound lane on

Highway 32. Plaintiff stated that, at the moment of impact, the front end of defendant's pickup was at or perhaps "a little" south of the center line of the pavement on Highway 32 with the front wheels of the pickup "either on the [center] line or still in my [westbound] lane." Trooper Mills found the debris "near the center line" and, on his official report received in evidence without objection, platted the point of accident on the center line. The left front corner of plaintiff's Chevrolet (the only portion of that vehicle shown in the photographs to have been damaged) struck the left side of defendant's angling pickup just in front of the door, with the collision described by defendant as a "sideswipe, that is all I would call it." According to plaintiff, the result was that "the rear end [of his Chevrolet] slid around toward the [north] ditch" and defendant's pickup "was shoved over a little more in his own [south] lane." That neither vehicle was damaged extensively was evidenced by the post-accident photographs in evidence and was confirmed by the fact that, after the trooper's investigation, defendant completed in the pickup his intended trip to Ironton, more than 30 miles from the scene of accident. Disclaiming any injury, defendant said "I didn't get no jolt."

 Defendant's concise and colorful account was that "I kind of looked down the highway [to the east], you know, I didn't see no car, then I looked back up that way [to the west]; when I went out there, here come that car"—"I went across, and a car was coming ninety to nothing around a curve and hit me."

We recognize, as plaintiff emphasizes, that he had the right to assume initially that defendant would obey the "STOP" sign, but he properly could have relied upon that presumption only until the contrary became, or in the exercise of the highest degree of care on his part should have become, apparent to him. Pitts v. Garner, Mo., 321 S.W.2d 509, 518(11); Myers v. Karchmer, Mo., 313 S.W.2d 697, 704(8); Harrison v. Weisbrod, Mo.App., 358 S.W.2d 277, 284 (15); Politte v. Miller, Mo.App., 301 S.W.2d 839, 842(3); Collier v. St. Louis Public Service Co., Mo.App., 298 S.W.2d 455, 460 (4). Plaintiff testified that "when I finally got about 60 or 75 feet [distant], I finally began to realize he [defendant] wasn't going to stop" and initiated evasive action by applying his brakes; but admittedly this was not until "he [defendant] was just pulling into the westbound lane [of the two-lane blacktop pavement on Highway 32], his front was just in it." Regardless of the point at which plaintiff *did* come to such realization and take evasive action, "the location of that point [at which, in the exercise of the highest degree of care, he *should* have so realized and taken evasive action] was for the jury" [Myers v. Karchmer, supra, 313 S.W.2d at 704]; and on the transcript before us we think the triers of the facts reasonably could have found that plaintiff should have initiated evasive action somewhat sooner than he did.

Furthermore, the only evasive action taken by plaintiff was to apply his brakes. Trooper Mills found no indication that plaintiff had turned to his right or to the north at any time; and, when plaintiff was asked directly "from the time you saw that [Ford pickup] coming up there and into your lane and across your lane, did you, at any time, attempt to turn your car to the right," his unequivocal admission was "no". The excusatory argument of plaintiff's counsel is that "to have swerved to the right would have been disastrous"—a dire conclusion by no means compelled in our view of the record. On the contrary, considering the evidence in the light most favorable to defendant and according to him the benefit of helpful inferences reasonably deducible therefrom, we believe that permissible findings would include the following, to wit, that the right wheels of plaintiff's westbound Chevrolet were about 4 feet south of the north edge of the pavement on Highway 32 when the left front corner of the Chevrolet inflicted a relatively light blow on the left side of defendant's Ford pickup just in

front of the door, as the pickup headed in a southeasterly direction at "about a 45 degree angle" was moving out of the path of plaintiff's Chevrolet at a speed of 15 miles per hour; that a comparatively slight swerving of the Chevrolet to its right or to the north would have averted the glancing impact; that, immediately prior to the collision, the north 4 feet of the blacktop pavement and the north shoulder 4 feet in width, or a total of 8 feet, were available to plaintiff for such swerving; and that, with the broad mouth of Route Y then clear of traffic, plaintiff could have swerved toward and, if indicated, into that broad mouth without endangering the Chevrolet or its occupants.

It is said generally that the trial court should never withdraw an issue from the jury unless all reasonable men, in the honest exercise of a fair and impartial judgment, would reach the same conclusion from the facts which condition the issue [Brandt v. Thompson, Mo., 252 S.W.2d 339, 341(1); Bronson v. Kansas City, Mo.App., 323 S.W.2d 526, 531–532(12)], and specifically that this is true with respect to an issue concerning contributory negligence where the inquiry is whether reasonable minds might differ as to whether or not plaintiff's conduct generally conformed to that of a reasonably prudent person. Brandt v. Thompson, supra, 252 S.W.2d at 341(1); Buff v. Loch, Mo.App., 396 S.W.2d 263, 265(1,2); Cox v. Moore, Mo. App., 394 S.W.2d 65, 70(14, 15); Boone v. Richardson, Mo.App., 388 S.W.2d 68, 74 (10); Highfill v. Maier, Mo.App., 379 S.W.2d 191, 193(2, 3). With appropriate regard for those pronouncements, we are constrained to conclude that the issue as to the alleged contributory negligence of instant plaintiff in the respects submitted in defendant's instruction 6 was for the jury and that the trial court did not err in giving that instruction.

In five of the six cases cited by instant plaintiff [Myers v. Karchmer, supra, 313 S.W.2d at 704; Hutson v. Highley, Mo. App., 384 S.W.2d 278, 280–281; Harrison v. Weisbrod, supra, 358 S.W.2d at 284–285; Politte v. Miller, supra, 301 S.W.2d at 842–844; Marquis v. Goldberg, Mo.App., 34 S.W.2d 549, 551(3)] the primary question presented and ruled was as to whether plaintiff had been contributorily negligent *as a matter of law,* not as to whether the issue of contributory negligence was submissible; and in each of those five cases and likewise in the sixth case cited in plaintiff's brief [Kratzer v. King, supra, 401 S.W.2d at 407(2)] the issue as to plaintiff's contributory negligence was submissible. Nothing in those cases militates against our conclusion here.

The judgment entered upon the jury verdict for defendant is affirmed.

HOGAN, P. J., and TITUS, J., concur.